## SMELTZER *v.* WHITE.

1. Warrants issued on the county treasurer subsequently to the year 1860 by
   order of the board of supervisors of a county in Iowa, and duly signed by
   their clerk, were not, unless sealed with the county seal, genuine and regu-
   larly issued, and the treasurer was not authorized to pay them.
2. Where such warrants were sold by a citizen of Iowa to a citizen of another
   State, with a guaranty that they were "genuine and regularly issued," —
   *Held,* that the former thereby undertook that the warrants were not, in a
   suit brought against the county, subject to any defence founded upon a
   want of legal form in the signatures or seals; and that, the absence of the
   county seals being a breach of the warranty, the vendee, without returning
   or tendering the warrants, was entitled to recover of the vendor the dam-
   ages which he had sustained by such breach.

ERROR to the Circuit Court of the United States for the
District of Iowa.

The plaintiff in error, who is a citizen of Iowa, having sold
to the defendant in error, a citizen of Maryland, certain war-
rants purporting to be issued by the counties of O'Brien, Buena
Vista, and Clay, in the State of Iowa, guaranteed in writing
that they were "genuine and regularly issued."

Payment of said warrants having been demanded and refused,
suit was brought against the several counties. They demurred,
upon the ground that the warrants were not issued under the
proper seal of the county; and judgment was rendered in their
favor: whereupon this suit was instituted.

The Circuit Court rendered a judgment in favor of the plain-
tiff below: whereupon Smeltzer sued out this writ of error.

*Mr. Galusha Parsons* for the plaintiff in error.

*Mr. J. Hubley Ashton* and *Mr. Nathaniel Wilson, contra.*

Mr. Justice Strong delivered the opinion of the court.

All the assignments of error, but one, are founded upon exceptions taken to the charge of the circuit judge. They are numerous; and many of them do not conform to the rules of this court, or to the exceptions which were actually taken. Without examining them separately, we shall consider the legal questions they present, so far as they have any bearing upon the case.

The suit was founded upon express guaranties of the genuineness and regularity of issue of county warrants, — guaranties which, the plaintiff alleged, had been broken. He had sued the county to recover the amount of the warrants, and had been defeated, for the general reasons that the seal of the county had not been attached to the warrants, and that under the laws of Iowa, as held by the court, the warrants were invalid unless they bore the impress of the county seal. In the present suit against the guarantor, the circuit judge instructed the jury that the guaranties covered the defect of the want of the county seal upon the warrants; and that, inasmuch as they did not bear the seal (the fact having been decided in the suit against the county), the guaranty was broken, and the defendant was liable. To this instruction several objections are now urged. It is said, first, that the warrants were genuine and regularly issued, even though they did not bear the impress of the county seal; that the statutes of the State did not require that county warrants should be sealed with the county seal. This, we think, is clearly a mistake. Prior to 1860, the county judge had the management of the business of the county, with the usual powers and jurisdiction of county commissioners; and the county funds could be paid out by the treasurer only upon warrants issued by him. Rev. Stat. of Iowa, 241, 243, 360. It was made his duty "to audit all claims against the county; to draw and seal with the county seal all warrants on the treasurer for money to be paid out of the county treasury." Code, 106. The treasurer was authorized to pay only warrants thus drawn and sealed. The language of the statute was, and it still is, " The treasurer shall disburse the same (the county money) on warrants drawn and signed by the county judge, and sealed with the county seal, and not otherwise." In 1860

the powers and duties of the county judge in this respect were transferred to a county board of supervisors (act of March 22, 1860, Rev., sect. 312 *et seq.*), and the clerk of the District Court was constituted their clerk, and required to sign all orders issued by the board. Now, as the treasurer can pay no orders or warrants unless they are sealed with the county seal, and as all warrants were required to be sealed by the county judge until 1860, when the board of supervisors was charged with his duties (except that their warrants are required to be signed by their clerk), it is very evident that no warrant is a genuine county warrant which is unsealed with the county seal. The statute expressly requires the board of supervisors, in all cases where the powers conferred by the act upon the board had been before exercised by the county judges, to conduct their proceedings under said powers in the same way and manner as had been provided by law in such cases for the proceedings of the county judge. Rev., sect. 325. It is too clear, therefore, for debate, that the genuineness and regularity of issue of county warrants can exist only in cases when the warrants are sealed with the county seal; and so it has been decided by the Supreme Court of Iowa substantially, both in *Prescott* v. *Gouser*, 34 Iowa, 178, and in *Springer* v. *The County of Clay*, 35 id. 243.

It is next contended that the Circuit Court mistook the extent of the guaranty. The contention is, that a guaranty that the warrants were "genuine and regularly issued" meant only that they were not forgeries, that they were not issued without consideration, and that they were ordered by the proper officers. To this we cannot assent. It is true, even of a technical guaranty, that its words are to be construed as strongly against the guarantor as the sense will admit. *Drummond* v. *Prestman*, 12 Wheat. 515. Such, also, is the English rule. *Wood* v. *Prestner*, Law Rep. 2 Ex. 66; *Mason* v. *Pritchard*, 12 East, 227. So it has been held, that, in construing a guaranty, it is proper to look at the surrounding circumstances in order to discover the subject-matter the parties had in view, and thus to ascertain the scope and object of the guaranty. *Sheffield* v. *Meadows*, L. R. 4 C. P. 595. Now, if this principle be applied to the present case, it is easy to see what the parties intended. The plaintiff was a citizen of Mary-

land.  He purchased the alleged warrants from the defendant,
a citizen of Iowa.   He may be presumed to have had no actual
knowledge of what constituted genuineness and regularity of
issue of Iowa County warrants.   What was necessary for him
to be assured of was that the instruments he proposed to pur-
chase were valid and legal claims against the county, — claims
which might be enforced by law.   In view of this, the con-
struction contended for by the defendant is utterly inadmissi-
ble; and, even without this, the language of the guaranties
admits of no other construction than that which the court
below gave to it.   Under the law of the State, there could be
no genuine county warrants regularly issued, imposing a liability .
upon the county, which were not duly sealed.   The treasurer
was bound to pay those only that were genuine, and issued
according to the requirements of the law.

Again: it is urged on behalf of the defendant that the plain-
tiff was bound to know, or must be presumed to have known,
that the law required county warrants to be sealed with the
county seal; and that, as the defect was apparent on the face of
the instruments sold and guaranteed, the guaranties must be
construed as not covering a patent defect.   It is said it cannot
be admitted the defendant intended to guarantee any thing more
than the existence of facts of which the guaranty had no
knowledge.   To this it may be answered, that the absence of a
proper seal upon the instruments guaranteed was not a patent
defect equally within the knowledge of the plaintiff and defend-
ant.   Whether the instruments required a seal or not, and what
the seal should be in order to constitute them genuine county
warrants, regularly issued, depended upon the statute laws of
Iowa, of which it may be presumed the plaintiff had no actual
knowledge, and that for this reason he desired a warranty.
Having exacted one, it is a necessary deduction from it that it
was taken as a protection against his own ignorance of Iowa
law.   It was well said on the argument, that the only warranty
that would protect him against loss, in case it should turn out
that the county officers neglected to comply with the law pre-
scribing the mode in which county warrants should be executed
and issued, would be a warranty coextensive with the defences
to which such instruments were subject in suits against the

counties, founded upon non-compliance with the State law on the part of the county officers. We can have no doubt that the true meaning of the guaranties is that the guarantor undertook that the paper was not subject to any defence in suits against the county founded upon any want of legal form, either in the signatures or seals; and we think the absence of the proper seal was a breach of the warranty, rendering the defendant liable for the loss which the plaintiff sustained thereby.

It is next urged by the defendant that the Circuit Court erred in holding him estopped by the judgments rendered in the plaintiff's suits against the county. This assignment rests upon a mistake of fact. The court did not so rule; and, had such ruling been made, it would have been harmless. The warrants were in evidence, and they exhibited the fact, not contradicted, that they were not sealed as the law required. They were, therefore, not genuine county warrants regularly issued; and it was the duty of the court so to declare them. The defendant's contract was broken as soon as it was made; and the plaintiff was entitled to a verdict, no matter whether the judgments in the suits against the county were conclusive or not. It would, therefore, be idle to discuss the question, whether the court below would have fallen into error had the jury been instructed that the former judgments were conclusive. The question is impertinent to this case. We may, however, simply refer to some decisions which tend strongly to show that those judgments were in law conclusive upon the defendant, especially as he had seasonable notice of the defences set up by the county in the plaintiff's suit on the warrants, and was required to assist in the prosecution of the claims. *Carpenter* v. *Pier*, 30 Vt. 81; *Lovejoy* v. *Murray*, 3 Wall. 18; *Walker* v. *Ferrin*, 4 Vt. 529; *Chicago* v. *Robbins*, 4 Wall. 658; *Clarke* v. *Carrington*, 7 Cranch, 322; *Drummond* v. *Preston*, 12 Wheat. 515.

The fifth assignment is, that the court erred in overruling the defendant's offer to show that the warrants were regularly issued for legal claims against the county. The offer, we think, was correctly overruled. The evidence proposed had no relevancy to the issue in the case. That the warrants were issued for debts due by the county was of no importance if they were

not genuine, and in the form that the law required, to enable the holder to set them up as legitimate claims against the county. What availed it to the plaintiff that the county owed the sums of money mentioned in the warrants, if the warrants were nullities? His only means of recovering the money was through the warrants.

The instruction given respecting the measure of damages is not open to any just exception. It was as follows: —

"The amount which the plaintiff paid the defendant for the warrants is *prima facie* evidence of their value at the time; and there is also the evidence of the defendant that they were sold by him to the plaintiff for their market value, based on the assumption that they were valid; and there is no other or different evidence on the subject of value. I therefore instruct you the plaintiff is entitled to recover . . . the amount of the consideration which he paid and the defendant received therefor (for the warrants), with six per cent interest per annum on such amount."

No other rule for the measure of damages could have been given to the jury. *Eaton* v. *Mellus*, 7 Gray, 573.

It is contended, however, that the court erred in refusing to charge as requested, that there could be no recovery without a return of the warrants, and in charging as follows: —

"It is not necessary thus to recover that the plaintiff should, before suit was brought, have tendered back the warrants mentioned in said written guaranties. It is enough that they are in court at the trial; and the court can order them to be retained, and, on payment of the judgment rendered herein, to be delivered to the defendant."

This instruction was in strict accordance with all the well-considered decisions. In case of a breach of warranty, the person to whom the warranty has been given may sue without a return of the goods. He is not obliged to rescind the sale. Thus the law is stated by Kent, 4 Com. 480. In *Man. Co.* v. *Gardner*, 10 Cush. 83, the Supreme Court of Massachusetts ruled that a vendee may sue for a breach of warranty, without returning the goods; and such is the rule in England. *Fielder* v. *Starkin*, 1 H. Bl. 17; *Pateshall* v. *Tranter*, 3 Ad. & Ell. 103. It is true, that, when a vendee seeks to rescind

the contract of sale, he must return the property, or tender it; but when he relies upon an express warranty, and sues upon it, he may recover the damages sustained by its breach without returning or tendering the property. This we understand to be the universal rule. There is, then, no just ground of complaint that the circuit judge charged as he did upon this subject, and much less that he added it was enough that the warrants were in court, and could be impounded for delivery to the defendant. If any one could complain of this last declaration, it was the plaintiff, and not the defendant.

What we have said sufficiently disposes of all the assignments of error, except the eleventh and twelfth. The eleventh is to the refusal of the court to charge as requested by the defendant's third prayer; which was, that "if the jury should find from the evidence that the warrants were regularly issued by order of the several boards of supervisors directing the same, for a valid and subsisting indebtedness by said counties respectively, for the several amounts thereof, and that the plaintiff has not at any time offered to return them, he could only recover the difference between their value without the county seal and their value with said seal at the time of the several sales, and interest." The fourth instruction asked for, but refused, was, "that the several assignments of the warrants carried with them the right to sue and recover the several demands for which they were issued; that if the plaintiff has retained the warrants, without any offer to return them, until the right of action upon the original indebtedness is barred by the Statute of Limitations, and the right of the holder to affix the county seal to the warrant is also barred by the statute, the jury should find for the defendants."

Of these it may be remarked, in addition to what we have said of the supposed obligation of the plaintiff to return the warrants before bringing his suit on the warranties, that there was no evidence whatever that the unsealed warrants had any value. The fair presumption is, that they had none, since they were not drawn as the law required, and since the county treasurer had no authority to pay them. It would, therefore, have been error had the court submitted to the jury to find that they had a value, and to deduct it from what their value would have been had they been genuine warrants regularly issued.

The plaintiff, as we have seen, was a citizen of Maryland. Buying, as he supposed, Iowa County warrants, and ignorant of their necessary form, he took from the seller an engagement that the subjects of his purchase were such warrants, genuine and regularly issued.. He had a right to rest upon that engagement. It was not his duty to inquire farther. Assuming that it was possible, when he took the warrants, to procure the impress of the county seal upon them, he was under no obligation to procure it; and there is no evidence that he discovered that the instruments were not what the defendant warranted them to be until May 14, 1870, when, in his suit against the counties, they were adjudged void. Then it was too late to obtain, if they ever could have been obtained, regular warrants, or to obtain the impress of the county seal upon those he held. The right to require the affixing of the seal ceased, under the statutes of Iowa, at the expiration of three years from the issue of the warrants. That period had expired before 1870. The right of action on the original claims against the counties was barred at the end of five years from the time it accrued, and all the warrants were dated more than five years before they were adjudged void. The right of action on the original claims against the counties, even if it did pass to the plaintiff by the assignments of the unsealed warrants, was gone, therefore, when he discovered that the defendant's guaranty was broken; and consequently the defendant suffered no loss by not being remitted to the possession of the warrants then or subsequently. Before that time, there can be no pretence that the plaintiff should have returned them. From this it follows very plainly, that the third and fourth requests to the Circuit Court could not have been properly granted.

*Judgment affirmed.*