CHANDLER and another *v.* THOMPSON and another.

*(Circuit Court, W. D. North Carolina.* November Term, 1886.)

1. FRAUD—SALE OF MACHINERY—WRITTEN CONTRACT—EVIDENCE—AGENCY.
    In an action for the price of saw-mill machinery manufactured and sold under a written contract calling for an engine of certain horse-power, and containing an express warranty that the machinery would do good work, it cannot be shown, on the part of the defendants, that plaintiffs' agent fraudulently represented that the machinery which they proposed to buy was of the character, and had the capacity, to do their work.

2. EVIDENCE—EXPERT TESTIMONY—MACHINERY.
    A machinist may testify, as an expert, whether the defective work and condition of a steam saw-mill, set up and afterwards examined by him, is due to defective construction, or want of skill in the management of it.

3. NEW TRIAL—MOTION FOR—NECESSITY OF BILL OF EXCEPTIONS.
    Upon a motion for a new trial in a circuit court of the United States, where the amount in controversy is not sufficient to admit of a writ of error to the supreme court, a bill of exceptions is not essential, in order to avail of exceptions taken at the trial. The recollection of the court may be aided by affidavits and the briefs of counsel.

4. SAME—JURORS' AFFIDAVITS.
    Upon a motion for a new trial, jurors will not be allowed to explain the grounds of their verdict.

5. SAME—NEWLY-DISCOVERED EVIDENCE.
    A new trial will not be granted on the ground of newly-discovered evidence, if the evidence relied on is merely cumulative, and if the witness apparently might have been produced at the first trial.

6. SAME—IMPROPER ARGUMENT—OBJECTION.
    Remarks of counsel in the course of argument to the jury, claimed to be improper, should be objected to at the time, and the interposition of the court invoked, in order to render such misconduct available upon motion for a new trial.

Action for the price of machinery sold. Verdict for plaintiffs. Defendants moved for a new trial.

*Davidson & Martin* and *J. H. Merrimon,* for defendants.

*Shuford & Jones,* for plaintiffs.

DICK, J. This case was tried before me at Asheville at the regular term of the court, in May, 1886, and judgment was rendered on a verdict in favor of the plaintiffs. A motion was made for a new trial at said term, and was continued for argument and the preparation of briefs by counsel. Exceptions to the rulings of the court were taken by the counsel of the defendants during the trial, but were not formally reduced to writing, and presented in the court for signing. As the amount in controversy in this action is not sufficient to entitle the defendants to a writ of

error to the supreme court, to review the actions and rulings of this court, a regular bill of exceptions was unnecessary, and is not strictly essential, on a motion for a new trial, as the recollections of the court may be aided by affidavits and the briefs of counsel. Written and signed exceptions would be of service on this motion, as the counsel of the parties do not, in some respects, concur in their recollections of the proceedings, and the court does not clearly and distinctly remember all the details of the trial. I have a strong impression as to the decided preponderance of the testimony in favor of the plaintiffs, and the justness of the verdict.

As the counsel of defendants, in their arguments and elaborate brief, have manifested such earnest confidence in the correctness of their legal propositions, I have considered their motion with some degree of care, upon their statement of exceptions taken on the trial. I have not deemed it necessary to refer to the statements of the recollection of the counsel of the plaintiffs, and decide questions of variance in the matters in dispute.

Before referring specially to the arguments and the authorities cited by the counsel of the parties, I will state some general principles of law involved in the controversy, as announced by text writers and sustained by decided cases. Where a witness is offered as an expert, for the purpose of giving information and opinions to the jury to aid them in their determination of questions of fact, the court, by means of a preliminary examination, must first determine, as a question of fact, the qualifications of the witness as an expert. The proper test for the admissibility of such testimony is whether the witness offered as an expert has any peculiar knowledge or experience, not common to mankind, which renders his opinions founded on such knowledge or experience any aid to the court or jury in correctly determining the questions at issue. When such witness is adjudged to be an expert, he may be allowed to testify on questions of science or skill in any art or trade in which he is instructed by study or experience. Every business or employment requiring peculiar knowledge or experience, and which has a particular class of persons devoted to its pursuit, is an art or trade; and any person who, by study or experience, has acquired this peculiar knowledge and practical skill, may be allowed to give in evidence his opinions upon such matters of technical knowledge and skill, within the limits of his business, to enlighten the minds of a jury where they have to determine such matters in a pending trial. An expert cannot be properly allowed to express an opinion, on the whole evidence, as to the general merits of a case, or as to the amount of damages that ought to be assessed in a trial, as these are questions exclusively for a jury to determine.

When an expert may properly express an opinion, he does not decide the questions in issue; he only aids the jury in arriving at correct conclusions, and they must determine the questions of fact about which the opinion of the expert was given. The credibility of such testimony may be tested by the rules of evidence applicable to other witnesses, and its value greatly depends upon the knowledge, experience, opportunity, and capacity of the witness, and the soundness of the reasons upon

which his opinions are founded. The only purpose and effect of such testimony is to enlighten the minds of a jury upon subjects upon which they have acquired no theoretical or practical knowledge. A witness who has acquired knowledge in a particular art by long experience, can generally give a more intelligent, intelligible, and satisfactory opinion about his vocation than can be given by scientific experts upon questions of science, upon which opinions are often formed by means of theories, conjectures, and abstract reasonings.

Upon subjects of general knowledge, and upon matters pertaining to the daily occurrences and the usual business avocations of ordinary life, a jury is presumed to be familiar, and to need no aid from the opinions of a witness in making necessary and natural inferences and deductions from facts ascertained by them from the evidence offered. When such subjects and matters are to be investigated upon a trial, the rules of evidence as to expert witnesses are not applicable. But in a case like the one now before us, where they are required to consider the construction, quality, capacity, and proper operation of complicated machinery, they must be informed in some way upon the subject, as but few jurors are qualified to form correct conclusions as to an art with which they are not familiar. The reasonable and legal way of obtaining such necessary information is the hearing of the opinions of witnesses who, by the usual methods of acquiring such knowledge and skill, have made themselves capable of forming and expressing intelligent and rational views upon such subjects.

In this case the jury on the trial might have been able to decide that the saw-mill would not exert the full capacity of its power, and do good work, from the facts stated by the witnesses that the saw was warped, and the frame of the machinery was out of plumb, and was operated by persons who had little knowledge and skill in such business; but they would not have been able to determine from such facts the questions arising out of the express warranty as to the exact horse-power of the engine furnished by the plaintiffs, in alleged compliance with the terms of their engagement, and the reasonable and proper management covenanted by the defendants; and these were some of the material questions in issue to be determined by the jury.

A steam saw-mill is certainly a kind of machinery that requires peculiar knowledge and skill in its erection and operation, in order to exert and exercise the full capacity of its power. I think that I acted right on the trial of this case in allowing an experienced machinist, who had acquired information by actual observation and careful examination, to give his opinion in evidence to enlighten the minds of the jury as to the horse-power of the engine, and whether the saw-mill machinery was in such working order as to exert the full force of its power; and also upon the question as to what would be the effects and consequences that would result from operating the machinery when not properly adjusted, and unskillfully managed.

I will now consider more particularly the exceptions of the defendant, as stated in the brief of their counsel. First exception:

"The controverted issue was whether the failure of the machinery to perform the work which it was expected by the defendants, and represented by the plaintiffs, to perform, was attributable to the fact that it was not of the requisite capacity, (a 13 horse-power engine,) or defective construction, as insisted by the defendants; or to want of skill and care in its management, as insisted by the plaintiffs. With a view to show that the failure of the machinery was due to the carelessness or want of skill on the part of the defendants, the plaintiffs introduced one Boyd. who had put down the mill as their agent, and afterwards had been employed by the defendants to examine and reset it; and were permitted, against defendants' objection, to put the question ' whether the defective work and condition of the mill was owing to defective construction, or want of skill or management on the part of defendants.' The witness answered 'that, in his opinion, it was owing to want of proper care and skill in the management.' The defendants excepted."

The court, upon preliminary examination, had adjudged the witness Boyd to be an expert machinist. He had been employed in such art and trade, both by plaintiffs and defendants, and had acquired full knowledge as to the quality of the machinery, and its horse-power capacity. He had adjusted and arranged the mill, and it did good work. The mill was subsequently erected at another place, and was put out of proper order by the unskillful arrangement and management of incompetent machinists, sawyers, and workmen. He also further testified that, by actual measurement, he was satisfied that the engine was of 13 horse-power capacity. The plaintiffs had sold the engine as of 13 horse-power, and had, in a printed express warranty, stipulated "that the machinery above described shall be well and properly manufactured, of good material, and that, with proper management, it will perform well;" and the defendants, under their hands and seals, had accepted this warranty as a part of the contract, and had also covenanted "to use the said machinery with reasonable care."

Thus it appears that proper management was an express stipulation in the mutual contracts of the parties, and was one of the issues to be decided by the jury, who were incapable of determining this question of mechanical skill, and were enlightened, properly, by the opinion of an intelligent and experienced machinist, formed by his own observation and actual examination, and not from the testimony of other witnesses. As the value of such testimony was estimated by the jury, and was subject to all the tests of truth provided in the well-settled rules of evidence, it cannot, in any manner, be regarded as improperly influencing a determination of the general merits of the case. The jury decided the questions of fact by weighing the testimony of the expert witnesses on both sides of the controversy.

The counsel of defendants, in support of their exception, cited several adjudged cases which I cannot conveniently obtain, and must, therefore, rely on the quotations stated in their brief.

The case of *Wilson* v. *Reedy*, 33 Minn. 503, 24 N. W. Rep. 191, seems to be an authority sustaining the views of the defendants' counsel; but I do not concur in the decision, as I understand it from the brief. I think that, in all cases where questions of special mechanical skill and

care are involved in a trial in court, a jury may be properly aided in determining such question by the opinion of an intelligent and practical mechanic, as he is better instructed and qualified to form a correct and just opinion upon such questions than an inexperienced jury. *Transportation Line* v. *Hope*, 95 U. S. 297.

The other cited cases (*Buxton* v. *Somerset Potters' Works*, 121 Mass. 446; *Hopkins* v. *Indianapolis, etc., R. Co.*, 78 Ill. 32; *Koons* v. *St. Louis R. Co.*, 65 Mo. 592) do not appear to be in point, as they involved questions which were not within the technical limits of any science, art, or trade, and required no special skill or knowledge, but were matters of general observation or common experience, which a jury was competent to determine.

Second exception:

"The defendants proposed to show that, when they went to plaintiffs' agent (Van Gilder) to purchase, they informed him that they were not qualified to judge of the capacity and quality of machinery, having had then no experience in its management. They explained to him particularly the kind of work they desired to do, the character of the timber, and other circumstances material, and asked him to recommend the machinery necessary; that thereupon he did recommend the machinery they afterwards purchased, and assured them that it was of the character, and had the capacity, to do their work; that defendants having confidence in plaintiffs' agent, and relying upon his representations, they made the purchase; and that those representations were false, were so ,known to be by the said agent, and were made with the intent to deceive and induce the defendants to buy. This testimony was rejected."

The contract of sale was consummated by a contract signed and sealed by the defendants, and contained various express stipulations on the part of defendants, and an express warranty of the capacity and quality of machinery on the part of plaintiffs, which will be set forth in terms in a subsequent part of this opinion. This exception presents no difficulties requiring elaborate discussion, as the principles of law involved are well settled in text writers, and in judicial decisions of the highest authority.

In *Bast* v. *Bank*, 101 U. S. 93, we find the law thus announced:

"No principle of evidence is better settled at the common law than that, when persons put their contracts in writing, it is, in the absence of fraud, accident, or mistake, conclusively presumed that the whole engagement, and the extent and manner of their undertaking, was reduced to writing. When parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement, and we are not disposed to relax the rule. It has been found to be a wholesome one, and, now that parties are allowed to testify in their own behalf, the necessity of adhering strictly to it is all the more important."

I need not refer to other authorities firmly establishing the familiar general rule that parol evidence of contemporary oral agreements, communications, or stipulations cannot be permitted to vary, qualify, or contradict, or add to, or subtract from, the absolute terms of a written contract. This general rule is subject to some modifications, but no real exceptions, in courts of common law. I will refer to some of these

modifications for the purpose of showing that they are not applicable to the case now before us.

Parol evidence of surrounding circumstances is admissible to show the subject-matter of the contract, when ambiguous or indefinite; but the express terms cannot be varied by proof of the negotiations and transactions out of which it grew, and the circumstances which surrounded its adoption. In construing the terms of a written contract, such evidence is allowable for the purpose of ascertaining the real intention of the parties, but no new obligation or duty can be imposed on a party which is not warranted by a fair and reasonable construction of the words of the instrument. The general current of authorities shows that parol evidence is only admissible in courts of law to aid in the *construction* of written contracts, admitted or proved; to ascertain the subject-matter; to show the real nature of the instrument; or to explain latent ambiguities or indefinite terms; or to give effect to general customs, when they do not contradict express stipulations; or when the original contract was verbal and entire, and a part only of it was reduced to writing. Parol evidence is permissible to show a subsequent agreement, on a new consideration, varying the terms of a written contract.

The exceptions to the general rule as to the parol evidence that relate to fraud, mistake, or accident in a written contract usually arise in courts of equity, which have ample, elastic, and flexible forms and modes of procedure in administering full and adequate relief to suitors. Courts of equity will look beyond the terms of a written contract, and consider the whole transaction, and will hear parol evidence in the investigation of allegations as to matters of fraud which induced or affected the terms of the contract, if the person seeking relief has acted promptly and decidedly upon the discovery of fraud, and has not derived such benefits from the transaction as to prevent the parties from being placed *in statu quo.* Proof of fraud, in actions at law, is restricted to narrower limits; the alleged fraud must affect the execution of the instrument.

In *George* v. *Tate,* 102 U. S. 564, we find the rule of evidence upon this subject clearly stated and sustained by cited authorities:

"Proof of fraudulent representations by Myers and Green, beyond the recital in the bond, to induce its execution by the plaintiffs in error, was properly rejected. It is well settled that the only fraud permissible to be proved at law in these cases is fraud touching the execution of the instrument,— such as misreading, etc. The evidence was properly rejected for another reason. Where a party reaps the benefit which the bond gives in such cases, and is called upon to respond, he is not permitted to repudiate the obligation he has assumed."

The rules and principles of law thus announced are applicable to the case now before us. The contract between the plaintiffs and defendants about the saw-mill is evidenced by a written and sealed instrument, containing mutual and dependent covenants, defining the rights, liabilities, and duties of the respective parties, and providing a specific remedy for any defects that might be discovered in the material, construction, and proper working of the engine and other machinery.

' From the legal views of the defendants' counsel, so clearly and confidently expressed in their brief, I suppose that they did not advert to the distinction, so well settled, between a civil action in our state courts, in which legal and equitable rights and remedies may be adjusted and determined in the same trial, and an action at law in the federal courts, in which the principles, forms, and remedies of law and equity cannot be blended. *Van Norden* v. *Morton*, 99 U. S. 378.

The third cause assigned for a new trial is newly-discovered and material evidence, which by due diligence could not be procured on the trial, and, if a new trial is granted, will certainly change the result. The counsel for defendants strenuously insists that new trials ought to be liberally granted, "in furtherance of justice."

In criminal cases, when the life or liberty of the citizen is involved, a judge may properly exercise a liberal discretion in allowing a person convicted to have another opportunity of explanation and defense, when there is reasonable doubt as to guilt, or fairness in the first trial. But in civil cases, when the rights of the parties have once been determined after full investigation, by an impartial jury, the discretion of the judge should be a legal discretion, controlled by the principles and usages of law. The statute conferring jurisdiction upon the federal courts to grant new trials expressly provides that such power should be exercised "for reasons for which new trials have been usually granted in courts of law." This provision applies only to jury trials, and is directory to the courts, to be governed by the rules and principles of the common law. The courts of the common law have usually granted new trials when the verdict is against the weight of the evidence, or contrary to law, or when excessive or manifestly insufficient damages have been awarded; for the admission of illegal evidence, or the rejection of competent evidence; or when a party has been deprived of evidence by accident, and without fault on his part, or is taken by surprise in a matter that he could not reasonably anticipate; for misdirection of the court upon material questions of law, or for serious irregularity in the trial; or misconduct of the jury; or unfair conduct of the prevailing party; or manifest injustice has been done. Courts of law have also granted new trials when the losing party has discovered material evidence since the trial, and satisfied the court that he had used due diligence in preparing his case for trial; that the newly-discovered evidence will tend to prove a *material fact* which was not directly in issue on the trial, or was not then known and investigated by proof, and will probably produce a different result. A losing party cannot properly be allowed a new trial for newly-discovered evidence which presents no *new fact*, but is merely *cumulative* in its nature, or when he has not exercised previous diligence in procuring it, when the means were within his power. Steph. Pl. 95.

I have read, and carefully considered, the allegations and statements of matters of fact set forth in the affidavits of the defendants, and of N. W. Girdwood. The statements of Mr. Girdwood refer only to the horse-power capacity of the engine, and are merely *cumulative* expert evidence upon one of the main questions involved in the issues that were before

the jury, upon which there was expert testimony on both sides of the controversy. If a new trial should be granted, the newly-discovered testimony would be submitted to the jury for the purpose of rebutting or outweighing the testimony of the manufacturers of the engine, and two other intelligent and experienced machinists. The defendants have failed to satisfy me that they exercised due diligence in discovering and procuring on the trial the evidence now for the first time presented. The case was pending in court for more than two years, and from the pleadings it appears that defendants were aware of the nature of the legal defense claimed by them under the contract of purchase, and they must have been advised of the kind of evidence required to sustain their allegations.

Mr. Girdwood was a citizen of Asheville, the place where the machinery was purchased, and where the court was held in which the action was pending. He says in his affidavit that "he has lived in western North Carolina 16 years, and is familiar with the class of engines sold in this section for saw-mill purposes, and had experience in running saw-mills." A person so well known in the community, so highly experienced as a machinist, and so easily accessible, might have been procured as a witness on the trial by reasonable diligence.

Complaint is made on the part of defendants that a statement of one of the counsel of the plaintiffs in the concluding argument unduly influenced the verdict of the jury. It is insisted that he argued with much force that the evidence showed that the engine was of 13 horse-power, "but that, if it was subsequently ascertained that this was not true, the plaintiffs would surrender their judgment." No exception to those remarks was made on the trial, the interference of the court was not invoked at the time, and no special instructions on the matter were asked when the court charged the jury. If such statement was improper, exception ought to have been taken in apt time; and, now that it is called to the attention of the court for the first time, it cannot avail as cause for a new trial. *Knight* v. *Houghtalling*, 85 N. C. 28.

The affidavits of two jurors have been filed by defendants, setting forth opinions and views that influenced the verdict of the jury without averring any acts of misconduct. It is an old rule, and well settled, that, on a motion for a new trial, a jury will not be allowed to explain the grounds of their verdict. The policy of this rule is so apparent that no comment is necessary. 2 Tidd, Pr. 817; *Lester* v. *Goode*, 2 Murph. 37.

I have carefully considered the usual causes and reasons which have influenced courts in granting new trials, and find none that would authorize me to allow this motion of the defendants. I fully appreciate the wisdom and justness of the principle of law tersely expressed in a familiar legal maxim, and so often announced in judicial decisions, that the policy of the law is against second trials in the same action, as it is for the best interests of the state that litigation should be ended.

In conclusion, I will endeavor to state briefly my views, impressions, and recollections as to the general merits of this controversy, as developed on the trial, as this case has excited some degree of public interest. The action was brought to recover the price of a 13 horse-power engine,

and other saw-mill machinery, purchased and received from plaintiffs by defendants. The negotiations for the sale were conducted by the agent of the plaintiffs with the defendants, in Asheville, and, when agreed upon by the parties, the terms of the contract were expressed in an instrument signed and sealed by the defendants, in the form required by the plaintiffs when an order was made on them to furnish the machinery they manufactured. In this instrument ordering the machinery the defendants agreed to pay for the articles ordered the sum of $1,600, in certain specified installments, and made other stipulations and agreements as to the title and reasonable care of the property, until payment was fully made. In this instrument there was the following warranty on the part of the plaintiffs:

"*Warranty.* In consideration of the faithful performance of the above agreement, and the prompt payment of said notes at maturity by the makers of them, Messrs. Chandler & Taylor warrant that the machinery above described shall be well and properly manufactured, of good material, and that, with proper management, it will perform well; and, if the makers of said notes are unable to make the machinery operate well, then it shall be their duty to give written notice to the dealer or agent through whom they received it, and to Chandler & Taylor, and reasonable time allowed to remedy the defects, if any exist; and if they are not able to make it operate well, (the consignee rendering necessary and friendly assistance,) and the fault is in the machine, then it may be returned to Chandler & Taylor, and they shall furnish another in its place. But if the parties to this order have failed to make it perform aright through ignorance, or improper management, by either themselves, or by others connected with them, then they shall pay all necessary expenses incurred."

Under this contract the plaintiffs manufactured the machinery mentioned, and on or about the twentieth of February, 1882, delivered the same, in good order, to the defendants, at Asheville, who accepted, and afterwards used, the machinery in their business, up to the time of the trial of this case, in May, 1886. As the plaintiffs manufactured the machinery for a particular purpose, made known to them by the purchasers, the law would have implied a warranty on the part of the vendors that the machinery was fit and proper for such purpose, and free from latent defects. The express warranty which was received and accepted by the defendants contains the agreement of the parties as to the capacity and quality of the machinery, and the remedy for defects, and no warranty upon the same subject-matter can arise by implication of law. The words employed in the covenant of warranty must receive a fair and rational meaning, in ascertaining the intention of the parties. It is the fault of the defendants, who knew the terms of warranty before the purchase, and accepted the same, if it does not give them as effectual protection and remedy as they desired. As a general rule, where there is a written express warranty, fairly made, and fairly and knowingly accepted, and the terms are clear and positive in their meaning, there is no liability beyond the provisions of the instrument, as the law presumes that rational men understand their best interests, and know how to take care of them.

The counsel for the plaintiffs insisted that the defendants could have no remedy in this action, by way of counter-claim, for damages sustained; but on the trial the warranty was regarded by the court and the counsel for the defendants as an ordinary express warranty for the quality of goods sold. When there is a breach of such a warranty, the buyer may bring his action at once, after receiving without returning the goods, and their actual value only will be estimated in assessing damages; or he may avail himself of a counter-claim by way of recoupment, in an action brought against him by the vendor for the price.

If the purchaser, in a reasonable time after discovering a breach of warranty, returns the goods, the sale will be annulled, and he may successfully defend himself in an action by the seller for the price. In no case can the purchaser keep the goods, if they have any value, and have the contract rescinded, as rescission requires the entire contract to be avoided, and the parties placed *in statu quo.* *Lyon* v. *Bertram,* 20 How. 149; *Smeltzer* v. *White,* 92 U. S. 395; *Hurst* v. *Everett,* 91 N. C. 399.

Since I have had an opportunity of more carefully considering the terms of the contract between the plaintiffs and defendants, in relation to the machinery, I am strongly inclined to the opinion that the defendants were not entitled to their defense by way of counter-claim in this action. The warranty constitutes a part of the contract, and the terms are so expressed as to contain mutual and dependent covenants, and provide the remedy to be sought by the defendants, should the machinery be defective, and fail to do good work, with careful and skillful management. As the remedy was expressly agreed upon by the parties, and as it secured the defendant against all fraud and injury, and its requirements were not unjust or unreasonable, in construing the contract with reference to the subject-matter, and in the light of surrounding circumstances, we may well presume that it was the intention of the parties that the means of relief provided for were to be the primary remedy, and the defendants were to have no other remedy, unless they first performed the duties and obligations which they had assumed in their written covenant.

The evidence on the trial tended to show that the defendants had not complied with their express covenant, and that the plaintiffs had furnished the machinery in good order, and were able, ready, and willing to perform all the obligations of their warranty. As the questions of law arising upon my present construction of the contract were not fully argued before me, I will not express a decided opinion upon the subject, but I am inclined to think that, even if there were defects in the capacity and construction of the machinery, the defendants were not entitled to their counter-claim defense and remedy, as the liability of the plaintiffs cannot be extended beyond the express provisions of their covenant of warranty, which were accepted by the defendants under their hands and seals. It certainly would be no wrong or hardship on the defendants to require them to do what they expressly covenanted to do, before they could have a remedy at law against the plaintiffs, who have not had the opportunity of performing their obligations in the manner agreed upon by both parties in their joint instrument of contract. There is a well-

settled and just rule of law that the conduct of one party to a contract which prevents the other party from performing his part is an excuse for non-performance. I will not further discuss this question, as the rights of the plaintiffs involved in the issues presented by the pleadings have been determined by a fair and impartial trial.

I think that a decided preponderance of the evidence showed that the failure of the saw-mill to do good work was caused by the defendants not being willing to pay sufficient compensation to secure the services of experienced and competent engineers and workmen to operate machinery that required skillful management. "For the consequences of mismanagement, inattention, and the want of the required skill in the working the plaintiffs are not, nor does their contract in any manner make them, responsible" in this action. *Tyson* v. *Tyson,* 92 N. C. 291.

Motion for new trial disallowed.