## W. T. RAWLEIGH v. SHERWOOD, ET AL.

(No. 1562; June 18, 1929; 278 Pac. 565)

The cause was submitted for the appellant on the brief of *E. C. Raymond.*

The cause was submitted for defendants on the brief of *E. E. Wakeman* of Newcastle.

RINER, Justice.

This is a proceeding by direct appeal from a judgment of the District Court of Weston County denying appellant, the W. T. Rawleigh Company, any right of recovery against the respondents, L. McSweeney, W. J. Lawrence and W. A. Scott.

The action in which this judgment was entered was one brought by the W. T. Rawleigh Company, as plaintiff, against the respondents above named and one G. L. Sherwood, as defendants, to recover a balance of $518.38 claimed to be due for goods and merchandise sold to Sherwood under a printed form of contract entered into between him and the plaintiff. The other defendants were sued as guarantors, they having signed and authorized the delivery to the plaintiff of an agreement of guaranty printed on the same sheet as the aforesaid contract but just below it, promising payment to plaintiff of any in-

debtedness which might become due or owing under said contract between Sherwood and the W. T. Rawleigh Company. He filed an answer in the case, his guarantors joining in and filing a separate answer in their behalf. So far as the question involved in this appeal is concerned, it fairly arises upon the issues made by the petition and that part of the answer of respondents McSweeney, Lawrence and Scott, constituting a general denial of the allegations of plaintiff's pleading.

Upon a trial to the court, there was a general finding in favor of plaintiff against Sherwood, on the account set forth in its petition, in the sum of $627.23, and a judgment conforming to the finding was made and entered. In this result he has acquiesced, as no appearance has been entered for him in this court. The District Court further found that in so far as the defendants McSweeney, Lawrence and Scott were concerned, no liability on their part "to plaintiff under the contract set out in the petition has been shown," and the issues were accordingly found in their favor and a judgment dismissing plaintiff's action as to them was entered, with costs. From this judgment of dismissal this appeal is prosecuted by the W. T. Rawleigh Company, as has been said.

The portions of the contract between the plaintiff and Sherwood material to the proper understanding of the single question before us for disposition, read:

"THIS CONTRACT made and entered into at the City of Freeport, State of Illinois, by and between THE W. T. RAWLEIGH COMPANY, an Illinois Corporation, hereinafter called the SELLER, and G. L. Sherwood of Upton, in the State of Wyoming, hereinafter called the BUYER:

"WITNESSETH: Whereas said Buyer desires to purchase of the Seller, at wholesale, its manufactured Products, the Seller hereby agrees to sell and deliver to the Buyer, f. o. b. Freeport, Illinois, or at its option f. o. b. its branch houses, or at any point agreed upon, such quantities of its Products as the Seller may deem reasonable,

at current wholesale prices as shown on Invoice, unless prevented by strikes, fires, accidents, or other causes beyond its control; the said Buyer to furnish signed orders for such goods as he desires to buy.

"The Buyer agrees to pay said Seller at said Invoice price for all Products so purchased under this agreement by cash, or by installment payments satisfactory to the Seller, subject to the discounts as shown in current Discount Sheets and subject to paragraph 5 hereof."

Paragraph "5" referred to in the last sentence above quoted deals simply with the termination of the contract, and is not of interest to us in this litigation.

That part of the agreement of guaranty signed by each of the respondents McSweeney, Lawrence and Scott and material to be considered here, is in the following language:

"For and in consideration of The W. T. Rawleigh Company, the above named Seller, extending credit to the above named Buyer, we, the undersigned, do hereby jointly and severally, enter ourselves as sureties, and do hereby unconditionally promise and guarantee the full and complete payment to the said Company of any and all indebtedness, which may become due or owing under the terms of the foregoing Contract between the Buyer and Seller named as such therein; and to all of the terms, conditions, provisions and agreements we hereby fully agree and assent; hereby expressly waiving notice of acceptance of this Contract of surety by the Seller, and waive all notice of any nature whatsoever, and agree that the written acknowledgment by the said Buyer of the amount due or owing on his account, or that any Judgment rendered against him for moneys due the Seller shall in every and all respects bind and be conclusive jointly and severally against the undersigned. And we further agree that in any suit brought on this Contract of surety by the Seller, no other or further proof shall be required of it than to establish the amount or sums of money due and owing to it from the said Buyer under the foregoing Contract, and when so proven shall be conclusive and binding upon the undersigned jointly and severally and

that it shall not be necessary for the said Seller in order to enforce this Contract, and this Contract of surety to first institute suit or exhaust its legal remedies against the above named Buyer, and agree that any extension of time of payment or payments shall not release us from liability under this Contract of suretyship.''

The provisions of the several instruments quoted above are to be interpreted in the light of the testimony by deposition of the plaintiff's general secretary, J. R. Jackson, who testified, in substance, that the W. T. Rawleigh Company was an Illinois corporation, with a charter granted in 1895; that its business is that of manufacturing and selling at wholesale its manufactured products, which consist chiefly of family remedies, flavoring extracts, toilet preparations, spices, polishes, dips and disinfectants, poultry and veterinary supplies etc.; that plaintiff has conducted its manufacturing business in Illinois continuously since the date of its incorporation and also at Memphis, Tennessee, since September, 1912; that the W. T. Rawleigh Company sold G. L. Sherwood a quantity of the company's goods upon his written signed orders therefor, under a contract (the one from which the excerpt above is taken) the plaintiff had with him; that the goods were placed f. o. b. cars at Freeport, Illinois, where they became the sole property of Sherwood, and he could sell or dispose of them in any manner he saw fit; that he made an application satisfactory to the plaintiff and thereupon the latter sent him a contract to be signed by himself and responsible men as guarantors; that he sent this contract back by mail with his signature affixed as principal, and the signatures of respondents McSweeney, Lawrence and Scott as sureties; that there is still due and unpaid plaintiff on Sherwood's account $518.38 with interest since the termination of the contract on July 31, 1925; that the goods were sold Sherwood by plaintiff relying upon the guaranty signed by respondents McSweeney, Lawrence and Scott. This testimony stands in the record practically uncontroverted.

The only contention made by the guarantors is that the terms "its manufactured products" and "its products" as used in the contract, mean something produced or made by the company to the exclusion of articles kept for sale and sold by other manufacturers or dealers; that no part of the merchandise sold to Sherwood is identified as being manufactured products of the company, and that this term must, and of necessity does, mean something manufactured or made by the company. In connection with this contention our attention is directed by the citation of many cases to the elementary principle that a surety or guarantor is liable only to the extent he has bound himself on his contract and may stand on the strict terms thereof. With this general principle there can, of course, be no fault found, but before it may become operative, the true meaning of the terms of the contract must be determined. The courts have adopted certain well known methods of getting at the real import of the language used by parties to contracts of guaranty, as well as contracts generally, when that is doubtful or susceptible of different interpretation.

In Tucker v. Leise, 201 Iowa 48, 206 N. W. 258, where there was a dispute as to the meaning of a certain clause in the contract of guaranty there involved, the court said:

"This therefore calls for a construction of the guaranty clause in said option. The rule is too well settled to require citation of authority that where such clause is clear-cut, concise, and unambiguous, the wording of the contract must control; but it is also true that where the wording of a contract is ambiguous, or susceptible of two or more constructions, then the situation of the parties and the circumstances surrounding the transaction, together with the conduct of the parties in relation thereto, must be considered in ascertaining their intentions. Bridgeport Malleable Iron Co. v. Iowa Cutlery Works, 130 Iowa 736, 107 N. W. 937, 28 C. J. Sec. 79, p. 933."

494

In Kansas City etc. v. Youmans, 213 Mo. 151, 112 S. W. 225, the Supreme Court of Missouri quoted with approval the language employed in S. F. Bank v. Parrott, 125 Cal. 481, 56 Pac. 164, 73 Am. St. Rep. to the following effect:

"When it is said that a guarantor is entitled to stand upon the strict terms of his guaranty, nothing more is intended than that he is not to be held liable for anything that is not within the express terms of the instrument in which his guaranty is contained; that his liability is not to be extended by implication beyond these limits, or to other subjects than those expressed in the instrument of guaranty. But for the purpose of ascertaining the meaning of the language which he has used, and thus determining the extent of his guaranty, the same rules of construction are to be applied as are applied in the construction of other written instruments. His liability is not to be extended by implication beyond the terms of his guaranty as thus ascertained. The language used by him is, however, to receive a fair and reasonable interpretation for the purpose of effecting the objects for which he made the instrument, and the purpose to which it was to be applied."

Dealing in similar fashion with the same subject, in Smeltzer v. White, 92 U. S. 390, 23 L. Ed. 508, the court remarked:

"So it has been held, that, in construing a guaranty, it is proper to look at the surrounding circumstances in order to discover the subject-matter the parties had in view, and thus to ascertain the scope and object of the guaranty."

In Blyth, et al. v. Pinkerton, 10 Wyo. 135, 67 Pac. 619, 57 L. R. A. 468, this court, quoting from the case of Morgan v. Boyer, 39 Ohio St. 324, 48 Am. Rep. 454, used this language:

"A guarantor, like a surety, is bound only by the precise words of his contract. Other words cannot be added by construction or implication, but the meaning of the words actually used is to be ascertained in the same manner as the meaning of similar words used in other contracts. They

are to be understood in their plain and ordinary sense, when read in the light of the surrounding circumstances and of the object intended to be accomplished. The rule that a guarantor is held only by the express words of his promise does not entitle him to demand an unfair and strained interpretation of those words, in order that he may be released from the obligation which he has assumed.''

Giving the language of the guaranty agreement and that of the contract between the plaintiff and Sherwood a fair and reasonable interpretation for the purpose of accomplishing the objects for which these instruments were made, in the light of the situation of the parties and the circumstances surrounding the transaction, as disclosed by the record before us, we cannot agree that the words ''its manufactured products'' and ''its products,'' as used in the several clauses of the contract which Sherwood signed, and quoted above, referred only to such products as were manufactured by the W. T. Rawleigh Company and none others. The view that if the plaintiff sold to Sherwood manufactured articles or compounds originally made or fashioned by others, but at the time of sale a part of plaintiff's stock, such sales were not covered by the contract and guaranty in suit, we are inclined to think unsupported when the tests are applied as described in the decisions cited above. The several phrases under discussion do not say ''products manufactured by the W. T. Rawleigh Company,'' and limit the sales under the contract between plaintiff and Sherwood to them only. We consider that the impersonal pronoun ''its'' is used simply in a possessive sense; that is to say, Sherwood agreed to buy under his contract the manufactured products which the plaintiff owned and sold, regardless of who made or fashioned them. An examination of the list of articles ordered by and sold to Sherwood by plaintiff makes it perfectly plain that practically all of them were manufactured articles or preparations of some kind or another.

According to the evidence in the case, the plaintiff was and had been for many years in a manufacturing business in general covering articles of the sort apparently ordered and sold to Sherwood. The general secretary of the plaintiff company testified that it sold Sherwood "a quantity of our goods." The natural inference from this statement, when considered in connection with the nature of the company's business, would seem to be that the goods thus sold were merchandise manufactured by the plaintiff. There was no attempt on the part of the defendants to show by evidence that the fact was otherwise.

The plaintiff's officials testified they would not have sold Sherwood the goods he ordered, if the agreement of guaranty had not been signed by the respondents McSweeney, Lawrence and Scott and delivered to it. This statement stands undisputed. In brief, a guaranty was required by plaintiff to secure the sale price of the goods sold before they were turned over to the buyer. We cannot perceive that the facts of this case disclose any intention on the part of the plaintiff to make a distinction in its sale contracts and its guaranty agreements between payments made for products manufactured by it and products manufactured by others but vended by it. Undoubtedly for the products and merchandise it handled and sold, of whatever sort and kind, it expected and had a right to expect, payment to it of their purchase price. To secure that payment was the purpose of the guaranty. Viewing the matter from the position of the respondents McSweeney, Lawrence and Scott, we can see no intention on their part disclosed by the record to limit their obligation, as claimed. The written orders for goods of the plaintiff signed by their principal did not endeavor to make any distinction in listing the merchandise he desired, for they are all directed to be charged to the account of the buyer, and unless cash accompanied the order, he agreed to pay for "everything ordered and shipped according to contract."

From our search of the reported cases, in aid of reaching a correct disposition of this matter, it is apparent that plaintiff is a frequent visitor in the courtrooms of our sister states. Nearly a hundred opinions in the courts of last resort of the Union have come under our examination, where the plaintiff has been involved with contracts sometimes similar and sometimes practically identical with that at bar. We have not discovered where any contention such as is suggested now has been passed upon or even urged in these reported cases. The printed form of guaranty agreement prepared by plaintiff and executed by respondents Mc-Sweeney, Lawrence and Scott contains some exceedingly stringent provisions against the signers. Though their effect is not necessary to be examined in the instant case, some of the members of the court are inclined to believe that they go to the very verge of authority and right, if not beyond. If sober and clear headed business judgment were only consulted before parties signed such agreements, doubtless their names would not be affixed without considerable reluctance and hesitation.

Entertaining the views as expressed herein, we are constrained to reach the conclusion that the judgment of the District Court should be reversed, and the cause remanded for a new trial.

*Reversed and Remanded.*

BLUME, C. J., and KIMBALL, J., concur.