## FIRST NAT. BANK OF FT. COLLINS v. HUGHES.

### Sac. No. 94; September 16, 1896.

#### 46 Pac. 272.

**Note—Title of Plaintiff.**—A Finding That Plaintiff Bank was not the owner of the note sued on, which was in evidence, indorsed by the payee, cannot be sustained, as against the positive testimony of plaintiff's president and cashier that the note was bought by plaintiff of the payee before maturity, though plaintiff, on sending the note after maturity to another bank for collection, sent a new note to be executed by defendant, extending the credit for six months, which was made payable to the payee of the first note—plaintiff's president testifying that it was customary to have renewal notes so executed, and then indorsed by the payee—and though the cashier of another bank testified that it was customary to have notes discounted by a bank marked differently from the one in question.

**Note—Who may Sue on.**—Transfer of a Note to a Bank for Collection gives it such ownership thereof that it can sue the maker thereon.[1]

**Sale—Warranty.**—A Bill of Sale of a Stallion merely guaranteeing him to be a breeder excludes a guaranty of his being pure bred.[2]

**Sale—Warranty of Stallion.**—A Promise by the Seller, in a bill of sale of a stallion guaranteeing him to be a breeder, that, on satisfactory proof that he is not a breeder, the seller will give another in exchange for him, on his being delivered at a certain place, limits the buyer's remedy, in the absence of a refusal of the seller to comply with such agreement.

**Sale—Rescission for Breach of Warranty.**—After Consummation of a sale, the buyer cannot rescind it for breach of a warranty not

[1] Cited with approval in Routh v. Kostachek, 15 Okl. 238, 81 Pac. 430, where an agent bought a note with his principal's money and had it indorsed to himself. Suit was held properly brought in the agent's name.

[2] Cited with approval in Kullman, Salz & Co. v. Sugar Apparatus Mfg. Co., 153 Cal. 732, 96 Pac. 371, on a sale of a machine, where the court said that a complete written contract having been made, "oral representations or warranties and implied warranties and all oral negotiations are merged in" it, "and by its terms the parties must be bound."

intended to operate as a condition, though a note for the balance of purchase money has not been paid, his remedy being for damages suffered from the breach.[3]

APPEAL from Superior Court, Stanislaus County; William O. Minor, Judge.

Action by the First National Bank of Fort Collins against George T. Hughes. From a judgment for defendant and an order denying a new trial plaintiff appeals. Reversed.

Needham & Dennett for appellant; L. J. Maddux for respondent.

SEARLS, C.—This is an action to recover upon a promissory note dated May 25, 1891, made by defendant George T. Hughes, for $700, payable to the order of Jesse Harris, three years after date, at the First National Bank, Fort Collins, Colorado, with interest, etc. Plaintiff sues as the indorsee and owner of the note. Defendant's amended answer denies plaintiff's ownership of the note, or that it was ever the lawful owner thereof, or that it was ever, for a valuable consideration or at all, assigned to plaintiff, or that he is indebted to plaintiff on account thereof. Further answering, defendant avers that, at the date of the note, he purchased from the payee thereof, Jesse Harris, a "Cleveland bay stalllion," for $2,100, for which he gave three promissory notes, of $700 each, payable in one, two and three years—the note in suit being the last thereof. The answer then proceeds to aver that Harris, as an inducement to the purchase of said horse, represented that the horse was a pure-bred Cleveland bay horse, and would transmit his color and general characteristics to all his progeny; that at the end of two years the horse proved to be not a pure Cleveland bay, and his progeny was of mixed and off colors, and but few of them were Cleveland bays; that the representations of Harris were false and fraudulent, and made with a view to misleading defendant, and inducing him to purchase and give the three notes; that before the development of the progeny defendant had paid the first two notes, amounting to $1,500, which was in excess

---

[3] Cited and approved in Spaulding v. Pitts, 26 S. D. 85, 127 N. W. 612, stating that in case of sale with warranty and a breach thereof, the buyer may keep the property and sue for the breach, or plead the latter in reduction when himself sued for the price.

of the value of the horse; that before this action was brought he tendered the horse to Harris, and demanded the note here in suit, etc.; that the consideration of the note has failed, etc. He further avers, on information and belief, that the note was not transferred to plaintiff for a valuable consideration, "but only for the purpose of collection," and was made after maturity thereof.

Among the errors assigned by the appellant, an important one is that a special finding of the jury is unsupported by and is contrary to the evidence. The court submitted to the jury the following interrogatory: "Interrogatory No. 1. Was the plaintiff the owner of the note in suit at the time of the commencement of this action?" To which the jury returned for answer, "No." Plaintiff, on its part, for the purpose of establishing its case and its ownership of the note in question, (1) introduced the note in suit, duly indorsed by Jesse Harris, the payee thereof. (2) It introduced the depositions of three witnesses, viz., of Franklin P. Avery, president, G. A. Webb, cashier, and L. C. Morse, assistant cashier, of the plaintiff bank, all of whom testified clearly and positively that the bank was the absolute owner, by purchase for a valuable consideration before maturity, of the note in question. Their testimony does not differ, and we quote that of Morse as a sample of the whole. It is as follows: "I am a resident of Fort Collins, Colorado. Am assistant cashier of the First National Bank of Fort Collins. I was in the bank at the time of the transfer of the note in question, and examined the books again to-day. The note was transferred to the First National Bank of Fort Collins before it became due, for a valuable consideration. The transfer to the bank was made March 21, 1894 (it fell due May 25, 1894). $739.25 was the price paid for the note. We bought the note for its present worth at that time, and gave Mr. Harris the money for it. The note was not left by Mr. Harris with us for collection or as a collateral security." Defendant also offered in evidence a letter from Jesse Harris to said defendant, dated before the maturity of the note, viz., May 7, 1894, in which he says "that the First National Bank of this place [Fort Collins] owns your note coming due this month."

As opposed to this positive evidence, two circumstances were relied upon by defendant: First. After the note fell due

plaintiff sent it to the First National Bank of Modesto on two occasions for collection, and on the last occasion sent a new note, to be executed by defendant, extending the credit for six months. This new note was, like the first, made payable to Jesse Harris. This was explained by the officers of plaintiff as their usual custom in such cases. Avery, the president of the plaintiff, in his testimony said: ''The name of Jesse Harris, probably, was placed upon the new note. That was our customary way of taking renewals of notes of this class. We desired the note in the same form as the original, with Jesse Harris indorsing it, which at that time we considered good.'' The other circumstance is this: Each time when the note was sent out by plaintiff, it was marked for collection as follows: ''First Nat'l Bank, Ft. Collins, Col.'' ''Col. No. 21,755; also, 22,574.'' Defendant sought to prove by J. E. Ward, cashier of the First National Bank of Modesto, that these marks indicated that plaintiff held the note for collection simply, and not as an owner. The witness, however, did not so testify. He did testify that it showed the note had gone through plaintiff's collection register, and said it was customary, where bills were discounted, to mark them ''D. B.,'' but, when pressed to say that it indicated that it was only turned over for collection, replied that ''he could not say.'' The following question was put to the witness: ''Q. Don't the collection number mean that it is in their hands for collection?'' ''A. Yes, sir; or it may be transferred from one department of the bank to another. You can't tell as to that.''

It is matter of common knowledge with those who have transacted business with and for banks that many of them divide their business into departments, as, for instance, exchange department, collection department, discount department, etc. Under such circumstances it is quite natural that the collection department, receiving a security for collection, should treat it simply as a collection, to be accounted for to the bank or department from which it came. These considerations tend to weaken any inference or deduction of nonownership by the bank from the circumstance in evidence. Again, the answer of defendant avers, in substance, that the note was transferred to plaintiff for collection. This gave such an ownership in the note to the plaintiff as entitled it to maintain the action. True, if indorsed without considera-

tion or subsequent to maturity, as is averred, it would be subject to any valid defense of the plaintiff, but a recovery could not be defeated for want of ownership in plaintiff, alone. Under these circumstances, we are of opinion the evidence militating against the showing of ownership by plaintiff of the note in suit did not raise a substantial conflict, and is wholly insufficient to support the special finding of the jury. For the foregoing reasons a new trial should be had.

There is further matter involved in the case, which, in view of another trial, calls for some notice. As hereinbefore stated, the defendant pleaded fraud on the part of Harris, whereby he was induced to purchase the stallion and make the three promissory notes. The answer in this respect is not as full and explicit in its statement as is desirable. At the trial defendant testified as to certain representations made to him, prior to the purchase of the horse, touching his breed, and that his colts, instead of being all bay in color, were not over one-fourth of them of that color, etc., when it transpired that defendant had received a written warranty upon the purchase of the horse, which warranty was without objection admitted in evidence. It is as follows:

"Original.—No. 252.

"Office of Jesse Harris,
"Importer of English, French, and Scotch Horses.

"Ft. Collins, Colo., May 25, 1891.

"This is to certify that I have this 25th day of May, 1891, sold and delivered to George T. Hughes the imported Stallion Emancipation, No. 209; recorded in Volume I. of the American C. B. Stud Book. I hereby guaranty the above-named horse to be a breeder, and if, after two seasons' use, I have satisfactory proof that he is not a foal getter, I will, upon delivery of said horse at my establishment in Ft. Collins, Colo., give in exchange for him a horse of same breed, of equal value and merit, provided the above-named horse be returned to me in as sound and in as good condition as when purchased from me. Agents not allowed to deviate from this contract.

"JESSE HARRIS.

"I hereby accept conditions of above guaranty.
"GEORGE T. HUGHES."

Upon the back of the bill of sale was the following further stipulation:

"Modesto, Cal., May 25, 1891.

"I hereby agree that if the horse Emancipation (No. 209), A. C. B. S. Book, is in as good and sound condition as when purchased from me, I will exchange for him another horse of same breed and value at any time I may be through this state within two years with other stock for sale, but I do not agree to make a special shipment of one horse to this state for that purpose.

"[Signed]   JESSE HARRIS."

Printed letter-heads from Harris were also introduced in evidence, showing him to be an importer and breeder of "Cleveland bay" and other breeds of horses, and of the former it is said: "The Cleveland bays are the purest breed and most prepotent coach horses in the world. . . . . No other breed of horses transmits its color, form, and general characteristics to its progeny in such a marked degree as the Cleveland bay."

These letters were written after the sale to defendant, and could not have entered into the warranty. The warranty must be presumed to be a crystallization of the meaning of the several oral declarations which preceded it. A glance at that instrument shows that the parties settled upon the mode and measure of relief in case the animal sold did not fill the requirements of the warranty. This was that, at the end of two years, if he failed, Harris was, upon his delivery in sound condition at Fort Collins, Colorado, to exchange him for another horse of the same breed, of equal value and merit; or, as in the agreement of the same date indorsed on the warranty, to exchange him in like manner, at any time within two years, when Harris might be in California with other stock for sale, but he was not to make a special shipment of one horse for that purpose. There was no attempt made by defendant to prove that he ever returned the horse to Fort Collins, or offered to do so, for exchange, or that Harris was in the state with horses, and refused to make an exchange. The fact is, as appears by the testimony of defendant, that he never offered to cancel the contract until October, 1894, when he proposed to deliver the horse to the agent of Harris upon the surrender of the note in suit, and that the agent then proposed to him to "ship the horse to

Fort Collins, Colorado, and we will ship you a horse out here that we know to be a thoroughbred and true breeder.'' This was substantially what Harris had agreed in his warranty to do. ''The breach of a warranty entitles the buyer to rescind an agreement for sale, but not an executed sale, unless the warranty was intended by the parties to operate as a condition'': Civ. Code, sec. 1786. The sale in this case had been consummated for years, and was not open to rescission. If there was a breach of the warranty, and defendant suffered damages thereby, he is, upon proper pleadings, entitled to deduct the same from plaintiff's recovery, upon it appearing that plaintiff is not an innocent purchaser for value before maturity.

The judgment and order appealed from should be reversed and a new trial ordered, with leave to defendant to amend his answer if he shall be so advised.

We concur: Belcher, C.; Haynes, C.

PER CURIAM.—For reasons given in the foregoing opinion the judgment and order appealed from are reversed and a new trial ordered, with leave to defendant to amend his answer if he shall be so advised.