## W. L. ELWOOD, Appellant, v. J. A. McDILL.

**Sale.** A purchaser of a horse under a warranty that if it is not as warranted it may be returned and exchanged for another horse or the purchase price be refunded, has the option to either return the horse if not as warranted, or to retain it and to recover damages caused by the breach of warranty.

**DAMAGE.** A purchaser of a stallion warranted to be a "good foal getter," cannot recover the cost of keeping the horse for breeding purposes after he learns it is not as warranted.

**INTEREST.** A note with a specified amount, with interest, given for the purchase price of a horse under a contract providing for the return of the horse if not as warranted, and for the taking of another horse in lieu of him, with a credit on the note on account of the exchange, bears interest from its date instead of from the date of the exchange made in accordance with the contract.

**Evidence.** In an action on a note given for the price of a stallion, where the maker defended on a breach of warranty that the stallion was a reasonably sure foal getter, he was properly permitted to explain his written statement to the seller that the horse was in good condition. to mean that he was in good flesh and health; witness not knowing whether he was a foal getter; and the two statements are not contradictory, at all events.

**HARMLESS ERROR.** Hearsay evidence is not prejudicial where the same fact is subsequently established without contradiction.

**EXCLUSION:** *Review.* Refusal to permit an answer to a question whether a certificate of warranty was given with a certain horse on its sale, is not ground for reversal, as it would not be competent by an answer to such question to prove the character of the instrument given.

*Appeal from Mills District Court.*—HON. A. B. THORNELL, Judge.

### SATURDAY, MAY 14, 1898.

ACTION at law to recover amounts alleged to be due on two promissory notes. There was a trial by jury, and verdict and judgment for the defendant. The plaintiff appeals.—*Reversed.*

*Harl & McCabe* and *Patrick & Chantry* for appellant.

*John Y. Stone, L. T. Genung* and *W. S. Lewis* for appellee.

Robinson, J.—Each of the notes in suit was given by the defendant to the plaintiff on the ninth day of November, 1887, for the sum of one thousand and fifty dollars, with interest thereon at the rate of seven per cent. per annum. One was due July 1, 1889; and the other one year later. The notes and a stallion owned by the defendant, valued at four hundred dollars, were given to the plaintiff for a French stallion, known as "Freycinet," valued at two thousand five hundred dollars. As a part of the transaction, the plaintiff gave to the defendant a written warranty that Freycinet was sound, and a reasonably sure foal getter. The horse proved not to be as warranted, and in consequence was returned to the plaintiff in September, 1889; and the defendant then demanded his notes. He finally concluded to take another stallion, and selected one named "Caprice," which was delivered to him. Neither note was taken up, although five hundred dollars had been paid July 11, 1889, on the note which first became due; and the defendant states that Caprice was taken at the agreed price of one thousand eight hundred dollars, and that the plaintiff agreed to give the defendant a further credit on the notes, of seven hundred dollars. The terms on which Caprice was taken by the defendant are in dispute. He claims that, by verbal agreement, the warranty which applied to Freycinet was to apply to Caprice, while the plaintiff claims that the warranty of the last named horse was in writing. The evidence tends to show that Caprice was unsound, and not a reasonably sure foal getter, and in the fall of 1891 the

defendant disposed of him for about two hundred dollars. The defendant alleges that the consideration of the notes has failed, and, by way of counterclaim, he seeks to recover expenses of keeping the horses, and the damages sustained by reason of the breach of warranties given, to the amount of one thousand seven hundred dollars. The jury returned a verdict for the defendant in the sum of one thousand three hundred and fifty-nine dollars and ninety-five cents, but pending a motion for a new trial the defendant offered to remit all of the amount of the verdict in excess of eight hundred and fifty dollars. The motion was overruled and judgment was rendered in favor of the defendant for that amount.

I.   The defendant admitted as a witness, that in September, 1890, he wrote a letter to the plaintiff, in which he said that Caprice was "in good condition." He was asked, notwithstanding an objection by the plaintiff, to state what he meant by that expression, and answered: "I meant the horse was in good flesh and health, apparently. Did not know September 6, 1890, whether he was a good foal getter or not." We do not think the court erred in permitting the question to be answered. The answer given was not contrary to, but in harmony with, the statement contained in the letter. The question did not call for an answer in conflict with that statement, nor with the understanding which the plaintiff was entitled to rely upon respecting it.

II.   The appellant complains of the admission of the testimony of one Bruen in regard to the number of mares served by Caprice which were with foal by him, on the ground that the testimony was hearsay. The record shows clearly that the testimony was objectionable for the reason stated; but prejudice from its admission could not have resulted, because the facts sought to be proved by it were, in substance,

testified to by other witnesses, whose testimony was not
contradicted.

III. A witness named Fisk, who was the superin-
tendent of the stock farm of the plaintiff when Freyci-
net was exchanged for Caprice, and had something to
do with the transaction, was asked to state whether a
certificate of warranty was given with Caprice.
It is claimed by the plaintiff that such a certifi-
cate was given, and, if so, he was entitled to show
that fact. An answer to the question might, perhaps,
have been allowed on the ground that it was prelimi-
nary only; but it would not have been competent to
prove the character of the instrument by the answer
called for by the question. The form of the question
was not unobjectionable, and we should not be inclined
to reverse the judgment of the district court for its
refusal to permit an answer.

IV. The appellant complains of the third para-
graph of the charge. That instructed the jury, in effect,
that, if Caprice was taken by the defendant at the
agreed price of one thousand eight hundred dol-
lars, the effect would be to credit on the
notes the difference between that sum and
the price of Freycinet, or seven hundred dollars
at the date of the exchange, in addition to the
five hundred dollars paid in July, 1889, and that
the plaintiff would be entitled to recover nine hun-
dred dollars, with interest thereon, but only from
the date of exchange, according to the terms of the
note. In this the court erred. The testimony of the
defendant showed that Caprice was taken under the
contract for the sale of Freycinet, which provided for
his return if not as warranted, and for the taking of
another horse in lieu of him, and that the defendant
was merely to have a credit of seven hundred dollars on
his note on account of the exchange. No agreement

providing that the notes should only draw interest from the date of the exchange was shown; and, so far as the facts are disclosed by the record, the notes were to remain in force, with an additional credit thereon of seven hundred dollars, as of the date of the exchange.

V.   The eighth paragraph of the charge, in regard to the measure of the defendant's recovery in case he showed a breach of warranty in the sale of Caprice, stated, in effect, that the defendant was entitled to recover the difference between the value of Caprice as he was when the contract of warranty was made, and what his value would have been had he been as warranted, if that was more than his actual value at the time, and that, if the horse was kept for breeding purposes, the defendant would also be entitled to recover such sum as he had expended in caring for and keeping the horse.   The appellant justly complains of the last part of the paragraph, because it did not limit the right of recovery for expenses to those which were incurred before the fact was known that Caprice was not a reasonably sure foal getter, but permitted a recovery for all the expenses of keeping him from the fall of 1889 until he was sold.   The defendant knew within a short time after receiving him that he was unsound, and knew that he was not a reasonably sure foal getter, not later than the spring of 1891, and at some time during the first year he was used.   The fact that the horse was unsound did not necessarily show that he was not a good foal getter, but the defendant was not justified in incurring the cost of keeping the horse for breeding purposes at the expense of the plaintiff, after knowing that fact.

VI.   The contract of warranty given with Freycinet provided that, if he should not be as warranted, he might be returned, and if in as good condition as when

sold, exchanged for another horse of fair value, or the purchase price be refunded. It is claimed by the appellant that Caprice was taken subject to that warranty, and that it was the duty of the defendant to return him when he proved to be not as warranted. The contract did not, however, provide for the return of the horse, if not as warranted, to the exclusion of other methods of procedure and other remedies. In that respect it is similar to the contracts considered in *Love v. Ross*, 89 Iowa, 400, and *Hefner v. Haynes*, 89 Iowa, 616, which were held to give to the purchaser the option to return the stallions purchased, or to retain them and recover damages caused by the breach of warranty.

VII. We have yet to consider the effect of the errors in the charge of the court to which we have referred. The interest of which the plaintiff may have been deprived by the error in the third paragraph may have amounted to about three hundred dollars. The cost of keeping Caprice for breeding purposes was at least four hundred and ten dollars a year, and he may have been kept nearly a year after the defendant knew that he was not a reasonably sure foal getter. The evidence as to dates is so indefinite that we are unable to determine what the jury allowed the plaintiff for interest, and what it allowed the defendant for keeping the horse for breeding purposes. Therefore we are unable to say what the errors amounted to, and cannot say that they did not exceed the amount of the verdict remitted. For the errors pointed out the judgment of the district court is REVERSED.