[No. 7553]

Denver Horse Importing Company v. Schafer et al.

1. EVIDENCE. *Parol Inadmissible.* All prior negotiations merge in the writing finally executed to evidence the agreement of the parties. (380)

2. PLEADINGS. *Complaint Upon a Warranty of Personalty*, must show, not only the warranty, but substantial compliance with the conditions imposed by the contract, or facts excusing non-compliance.

The complaint counted upon the warranty of a stallion as a reasonably sure foal-getter. The contract of sale obligated the purchaser to proper feeding, etc., and other conditions. A complaint not showing compliance with these conditions nor excusing failure in that behalf states no cause of action. (381)

3. DAMAGES. *Measure*, in an action for the breach of a warranty of chattels is the difference between the market value of the chattel, at the time and place of the sale and delivery, if it had corresponded with the warranty (even though in excess of the agreed price), and its actual value with its then existing defects, together with any special damages necessarily resulting from the breach of the warranty. (382, 383)

The purchaser is to be allowed the expense of the keep of the animal, only up to the time when the breach of the warranty became definitely known. (389)

Interest is not to be allowed upon the damages. (390)

The purchaser having retained the animal, the seller is entitled to an allowance for his value, for other purposes than that for which he was purchased. (383)

4. ——*Loss of Profits.* The loss of profits during the breeding season is too speculative and remote. (389)

5. ——*Several Plaintiffs—Part Only Prevailing.* In an action

upon a contract, by several plaintiffs, as to only a part of whom the action is sustained, the recovery is the same as if all were entitled. (391)

6. EVIDENCE—*Presmptions.* The price at which a chattel is sold is presumed to be the real value where there is no other evidence upon the question. (384)

7. CONTRACTS. *Construed.* Contract for the sale of a stallion, with a warranty, followed by the words "or it will replace said horse with another of equal value." The liability of the seller is not limited by this alternative. If the animal was not as warranted the seller is liable in money damages. (384)

Though the contract for the sale of a stallion provides that upon certain conditions, to be kept by the purchaser, the horse "will prove to be a reasonably sure foal-getter," the warranty is as to the present condition of the animal. (388)

8. FRAUD. *Who May Complain.* Action upon a contract by several plaintiffs. Fraudulent representations on the part of some of the plaintiffs, made at the instance of the defendant, and inducing the others to enter into the contract, is no defense to the action. (390)

9. CHANGE OF VENUE. *Place of Performance of Contract—Action for Tort.* Action for the breach of the warranty of a stallion as a sure foal-getter. The warranty was upon certain conditions as to the manner of feeding and handling by the purchaser, the class of mares to which a stallion should be bred, and monthly reports to the seller of the names of the mares, with the name and address of the owners. Fraudulent misrepresentations inducing the purchase were alleged. Plaintiffs were farmers residing at the County of Lincoln. *Held* that under Sec. 27 of the code, the action was properly brought in the County of Lincoln, both because that was the county where the contract was to be performed, and because of the character of the action as one of tort; and that defendant was not entitled as of right, to change the venue to the county of its residence. (389)

*Error to Lincoln District Court.*—Hon. W. S. MORRIS, Judge.

Mr. R. BURGE TONEY and Messrs. O'DONNELL, GRAHAM & O'DONNELL, for plaintiffs in error.

Mr. HENRY TROWBRIDGE, for defendants in error.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The plaintiff in error, defendant below, on the 12th day of April, 1909, sold to the defendants in error, plaintiffs below, a stallion for breeding purposes, at the price of $4,000, under and according to the terms of a written agreement of that date duly executed. This agreement is entitled "BILL OF SALE AND AGREEMENT," and omitting formal parts, is as follows:

"Know all men by these presents, that The Denver Horse Importing Company, of Denver, Colorado, for and in consideration of the sum of four thousand dollars have this day sold the registered Percheron Draft Stallion named "Gosse," 17685 (69735), weight 1865 lbs. to the undersigned purchasers, who have examined said horse and received him in good condition and made payment for him as follows: No cash, and notes of even date herewith: One for $1334.00, payable on or before November 1, 1909. One for $1,333.00, payable on or before November 1, 1910. One for $1,333.00, payable on or before November 1, 1911.

That said, The Denver Horse Importing Company assumes no responsibility on account of disease or accident to said horse after delivery, but guarantee him to be an imported registered Percheron stallion, and that, with proper feeding, handling, exercise and care he will prove to be a reasonably sure foal-getter, if properly bred to healthy producing mares, returned for trial at proper periods, or it will replace said horse with another one of equal value, provided said horse sold, is returned to said Company at its nearest stable in as healthy, sound and good condition as he is at present, together with all pedigrees and certificates of registry.

In consideration of the delivery of said horse, it is understood and agreed that this guarantee is binding on the said The Denver Horse Importing Company, only on the express condition that the purchasers of said

stallion strictly comply with all their obligations, and the tenor and effect of their said promissory notes, and that, between the first and tenth day of each month, during the entire breeding seasons each year, while the horse is being tested, they furnish The Denver Horse Importing Company at Denver, with the written name and description of each mare bred, the date she was bred and the name and address of the owner of same, time being made the essence of this agreement.

It is agreed that this is the sole contract between the parties hereto, and is not subject to change or alteration, either written or verbal, by any representative or agent and is not transferable.''

The complaint alleges two causes of action. The first of these is based upon allegations of fraud and deceit upon the part of the defendant, in representing to the plaintiffs, purchasers, that the stallion was a sure foal-getter when in fact he was not, with the usual allegations in such case as to the knowledge upon the part of the defendants, want of knowledge upon the part of plaintiffs, and their reliance upon the allegations made by the representatives of the defendant in that respect. The second cause of action was upon the said written contract of sale. The prayer in both instances was for damages and not for rescission of the contract.

The case was tried to a jury, and verdict and judgment rendered in favor of the plaintiffs below, in the sum of $4,400. Timely objection was made that neither the first nor second counts state a cause of action, which in law entitles the plaintiff to recover.

It appears that prior to the actual sale, the stallion was exhibited through the community where the defendants in error reside, and as consent was obtained from each of them, his signature was secured to a written agreement to purchase the animal upon the terms as

recited in the agreement above stated, and as finally consummated, each of the purchasers agreeing to take one share at the value of $400, provided ten signatures could be so obtained, thus making the purchase price of the stallion $4,000.

Under both causes of action items of damages were claimed as follows: (a) $2,200 for loss of the entire breeding season for the year 1909; (b) $560 expended by plaintiff for keep and maintenance of the stallion; (c) $1,184.90 with interest thereon since the first day of November, 1909, paid on the first of three promissory notes, set forth in the contract; and (d) the sum of $2,600 with interest thereon since the 12th day of April, 1909, for the value of two remaining notes outstanding.

There is but little, if any conflict in the testimony material to the case. The three notes were sold by the defendant prior to maturity, and to an innocent purchaser. The first of these notes, less credits given by the defendant thereon, and in the unpaid sum of $1,184, had been paid to the holder by the plaintiffs below, prior to the commencement of this action. The stallion was found to be barren and unfit for breeding purposes.

It is plain that the plaintiffs were not entitled to recovery under the first cause of action in the light of the facts thus appearing, both from the pleadings and from the evidence. This, if for no other reason, than that all agreements and negotiations appear plainly to have merged in the final agreement above set out, and that for such reason whatever rights plaintiffs below may have in the premises, must be based upon breach of the warranty contained in such agreement. The question as to whether or not the plaintiffs were entitled to recover under the second cause of action as pleaded, has been one of more serious concern for the court.

Holding as we do that the plaintiffs right of recov-

ery, if any, must be based upon the written agreement and contract of warranty, and it appearing likewise that this action must be held to be one not in rescission of contract, but for breach of warranty, the suit is one in damages alone, for breach of the written agreement.

It is elementary that in a suit for damages for a breach of warranty, before the plaintiff may recover, he must not only plead the contract of warranty, together with the breach thereof, but in addition thereto, a substantial compliance upon the plaintiff's part, with his obligations contains in such contract, or in the event of a failure to so comply, then such facts as may sufficiently constitute a waiver or excuse, for non-compliance.

Clearly there are no such allegations upon the part of the plaintiffs, contained in the second cause of action. The contract in this case obligated the plaintiffs to proper feeding, handling, exercise and care, together with proper breeding to healthy, producing mares, returned for trial at proper periods. The warranty was further upon the express condition that the purchasers should strictly comply with all their obligations, and that between the first and last days of each month during the entire breeding seasons each year, while the horse was being tested, to furnish The Denver Horse Importing Company at Denver, with the written name and description of each mare bred, the date she was bred, and the name and address of the owner of same.

There is likewise no allegation in the second cause of action that the plaintiffs complied with all or any of these requirements, nor that there was a waiver by the defendant of any such requirements, nor that the plaintiffs were for any reason excused from a compliance with such obligations.

Plainly the complaint for such reason does not state a cause of action under the second count. Neither was

this defect cured by the answer nor by the replication. For this reason the judgment must be reversed.

Inasmuch as the case may probably be retried, it seems important that other questions raised and argued should be considered.

Counsel for the defendant company, complain of instruction No. 9, given by the court, concerning the measure of damages in this case. This instruction is as follows:

"The court instructs the jury that if you find the issues herein joined in favor of the plaintiffs and against the defendant, you have the right to assess as the plaintiffs' damage the difference between the value of the stallion in question for the purposes for which he was sold and purchased and the actual price agreed to be paid for him, which under the evidence in this case should not be a greater sum than $3,400."

The instruction was erroneous. The universal rule as to the measure of damages in an action upon breach of warranty, for chattels sold and delivered, is the difference between the value which the chattel sold would have had in the market at the time of the sale and delivery if it had corresponded with the warranty; and its actual value with the defects, together with such special damages as were the natural consequences of the breach of warranty or the fraud.—*Smith v. Mayer,* 3 Colo. 207; *Lilley v. Randall,* 3 Colo. 298.

Evidently the case was tried upon the theory of the plaintiffs accepted by the court, that it was an action for the recovery of the purchase price of the animal. The jury should have been instructed to ascertain the value of the horse, at the time of the sale for the purposes for which he was sold, if he had been so warranted, and his value at the time of the breach of the warranty for any other purpose, and that the plaintiffs' damages if any,

were to be measured by the difference between these two sums. The plaintiffs have elected to keep the horse, and the defendant is entitled to its value for purposes other than that for which it was sold.

The plaintiffs were entitled to prove the real value of the horse at the time of the sale, if he had been as warranted, whether this exceeded the contract price or not. 30 Am. & Eng. Enc. 211, 212. Upon this point it was said in *Young v. Vannatta,* 113 Mo. App. 550, 88 S. W. 123:

"The court admitted evidence offered by plaintiff fixing the market value of the bull, had it been in the condition as warranted, at a sum exceeding the purchase price paid; and the jury was directed, 'if they found for the plaintiff, to allow him as damages the difference, if any, between the value of the bull as it would have been, had said bull been of the kind and character as warranted by defendants, or either of them (if you find they did warrant it, as defined in another instruction), and its actual value, if any, as shown by the evidence at the time and place of sale.' The rule followed is supported by the great weight of authority.—*Narr v. Norman,* 113 Mo. App. 533, 88 S. W. 122; *Chandler v. Lopus,* 1 Smith's Leading Cases, Pt. 1, p. 365; *Erggio v. Braggiotti,* 7 Cush. (Mass.) 169; *Brown v. Weldon,* 99 Mo. 569, 13 S. W. 342; *Layson v. Wilson,* 37 Mo. App. 636; Sutherland on Damages, Sec. 670; Benjamin on Sales, (7th Ed.) Pt. 2, p. 962. But defendants say the recovery should be limited to the purchase price paid. We do not think so. Plaintiff should be compensated for the actual loss sustained through defendant's wrongful breach of contract. The bargain he made, but failed to realize, is a part of his actual loss, for which he must be reimbursed."

There seems to have been no other testimony in this case as to the value of the horse at the time and for the

purpose for which he was sold, than the contract price, which was $4,000.

In the absence of other testimony as to value, this was sufficient. Where there was no other evidence of the real value of the article than the contract price, that is presumed to be the real value.—*Seigworth v. Leffel*, 76 Pa. St. 467.

The rule in *Seigworth v. Leffel, supra*, that the contract price is sufficient evidence of the value for the purpose for which the article was sold, is sustained in *Smeltzer v. White*, 92 U. S. 390, 23 L. Ed. 508. This rule was recognized in *Tilley v. Montelius Piano Co.*, 15 Colo. App. 204, 61 Pac. 483. The cases cited seem to be in harmony with the general trend of authority.

It is urged by counsel for the plaintiffs in error, that by the terms of the written contract, the company was bound only by the alternative in the agreement, "or it will replace said horse with another one of equal value, etc." and having tendered to the plaintiff another horse of equal value, it is absolved from further obligation under the contract. This is not tenable. The contract contains an express warranty in that it guarantees the horse to be an imported registered Percheron stallion, and that, with proper feeding, handling, exercise and care he will prove to be a reasonably sure foal-getter, if properly bred to healthy, producing mares, returned for trial at proper periods.

The proposition to replace the horse is clearly in the alternative and follows the warranty, being connected by the disjunctive word "or," which, when used in this sense, is defined by Webster as "A co-ordinating particle that marks an alternative; as you may read or may write,—that is, you may do one of the things at your pleasure, but not both. It often connects a series of words or propositions, presenting a choice of either.

Counsel for the company, to sustain its contention, cite *Beckett v. Gridley*, 67 Minn. 37, 69 N. W. 622; *Acme Harvester Co. v. Ernie*, 63 Kan. 858, 66 Pac. 1004; *Electric Co. v. Pulley Co.*, 11 Colo. App. 300, 52 Pac. 1030; *White v. Stelloh*, 74 Wis. 435, 43 N. W. 99; *McQuaid v. Ross*, 85 Wis. 492, 55 N. W. 705, 22 L. R. A. 187, 39 Am. St. Rep. 864; *First Nat. Bank of Ft. Collins v. Hughes* (Cal.) 46 Pac. 272; *DeWitt v. Berry*, 134 U. S. 306, 10 Sup. Ct. 536, 33 L. Ed. 896.

In *Beckett v. Gridley, supra,* the principal question was as to notice to the vendor of the failure of the warranty, a question not in this case, and the warranty was expressly limited to a return of the horse or a cancellation of the notes; but the language used in the opinion does not sustain the contention of the company here, in that it holds that the option was with the seller to make substitution of the chattel sold.

In *Acme Harvesting Company v. Erne, supra,* the case turned upon failure of the plaintiff to prove a breach of the conditions of the warranty. In so far as applicable, the case of *White v. Stelloh, supra,* is directly opposed to the contention of the defendant company, for the court in that case approved the following instruction:

"If you find that the defendant made an express warranty that the bull calf would be a sure stock-getter, in order to induce the plaintiff to purchase him, and that the plaintiff relied upon such statement of the defendant, and at the time of such warranty or statement there existed a defect or unsoundness in the calf which would result in his being sterile or not a sure stock-getter, and that such was the result, then you should find for the plaintiff."

In *McQuaid v. Ross, supra,* there was no express warranty involved and the doctrine of *caveat emptor*

was held to apply. The question of implied warranty is not within the present case.

*First National Bank v. Hughes, supra,* was a warranty strictly restricted and limited to the substitution of another horse. The doctrine as to the right of recovery under such limited warranty was stated in *Electric Co. v. Patent Pulley Co., supra,* to be:

"But the defendant, equally with the plaintiff, is bound by the terms of the contract of warranty, because it was the contract in pursuance of which it purchased the goods, and as that contract fixed the limits of the plaintiff's liability, there can be no recovery against it, excepting within those limits."

It is the settled rule of law that contracts which contain a provision for the return of the property and a rescission of the contract, or for a substitution of other property for that which fails to comply with the warranty, are not treated as exclusive in the remedy provided, unless such intention is clearly expressed by the language and terms of the warranty.

In the case of *Douglas Axe Mfg. Co. v. Gardner,* 10 Cushing, the question under consideration was fully considered. This case has been from that time very generally cited and approved. It was there held:

"When a seller, in addition to a warranty of property makes a promise to take it back if it does not conform to the warranty, we cannot hold that such superadded promise rescinds and vacates the contract of warranty. We are of opinion that, in such case, the buyer has, if not a double remedy, at least a choice of remedies, and may either return the property within a reasonable time, or keep it and maintain an action for breach of warranty."

In *Shupe v. Collender,* 56 Conn. 498, 15 Atl. 405, 1 L. R. A. 339, the court said:

"It is true that the defendant here sets up an agreement of the plaintiffs that he might rescind the contract of purchase on giving notice to them, if the planer did not correspond with the warranty, in which case they were to remove it. But this agreement did not deprive the defendant of all other remedy. It remained optional with him whether to avail himself of this special remedy or to resort to his remedy at law. The contract was clearly a sale of the planer with a warranty, to which was superadded an agreement that the plaintiffs would take it away if it proved unsatisfactory, on receiving notice to that effect. This superadded provision did not impair at all the warranty or the defendants right of action upon its breach."

In *Moore v. Emerson,* 63 Mo. App. 137, which was an action for breach of warranty in the case of a jack warranted to be a sure foal-getter, the court held:

"The collateral contract of warranty, *supra,* contains, in addition to the express warranty of breeding qualities in the animal sold, an agreement on the part of the seller to take him back and give another in exchange, if he fails to fulfill the warranty in a specified time. It does not contain any term or stipulation binding the purchaser to exercise the right to return the animal afforded him by the agreement of the vendor. Still less is there anything in the contract evidencing an agreement on the part of the purchaser to return the animal. As far as the obligations of the contract are concerned, they are unilateral and rest upon the vendor. It is the well settled law in this country that a right of action for breach of warranty exists, although the vendor expressly agreed to take back the animal if it failed to correspond to the warranty. In such case the right to return is merely a cumulative remedy."

Lord Ellenborough gave as one of the reasons for

the rule here adopted, that the plaintiff was not bound to take another watch in exchange; he could go on to the end of the chapter if he were obliged to take bad for bad.—*Wallace v. Jarmen,* 2 Starkie, 360.

In *Elwood v. McDill,* 105 Ia. 437, 75 N. W. 340, the court said:

"The contract of warranty given with Freycinet provided, that, if he should not be as warranted, he might be returned, and if in as good condition as when sold, exchanged for another horse of fair value, or the purchase price be refunded. It is claimed by the appellant that Caprice was taken subject to that warranty, and that it was the duty of defendant to return him when he proved to be not as warranted. The contract did not, however, provide for the return of the horse, if not as warranted, to the exclusion of other methods of procedure and other remedies. In that respect it is similar to the contracts considered in *Love v. Ross,* 89 Ia. 400, (56 N. W. 528) and *Hefner v. Hayes,* 89 Ia. 616, (57 N. W. 421,) which were held to give to the purchaser the option to return the stallions purchased, or to retain them and recover damages caused by the breach of warranty."

This seems to be the overwhelming weight of authority, and we are of opinion that the right of the plaintiffs in this case, the breach of the warranty being established to recover upon the warranty, is clear.

Counsel for the company contend further, that the contract of warranty was in *futuro* and not in *praesenti,* but no authority is cited to sustain this contention. This is novel but not sound. The sale was absolute and the warranty of the animal was as it was when sold. The warranty was that the stallion would prove his fitness for the purpose for which he was sold, and this of necessity implies a present fitness. We have only to refer counsel

for authority to the case of *White v. Stelloh, supra,* cited by themselves, and which involved the warranty of a bull calf but three months old at the time of the sale. The defendant in apt time and upon a showing that its residence, general offices and place of business was in the city and county of Denver, moved for a change of venue to that county. Section 27 of the code provides that actions upon contract may be tried in the county where the contract is to be performed, which in this case must be held to be the county where this action was commenced. The same section provides that actions for torts may be tried in the county where the tort is committed. So that the defendant was not entitled to a change of venue as a matter of right, and the motion was properly overruled.

The court very properly excluded from the jury the question of damages because of plaintiffs alleged loss of profits for the breeding season, as being too speculative and remote.

The special damages claimed for cost of keeping and maintaining the stallion, was not sufficiently pleaded, nor was there anything contained in the instructions to the jury, or otherwise, that limited this item to any particular period, for which the horse may have been so kept.

The plaintiffs may recover in such a case as special damages, the expense incurred in keeping the stallion for the purpose for which he was being kept, up to the time only that a breach of warranty became definitely known. This, together with the items and amount of damage in this respect, should be pleaded and proven with reasonable particularity.—*Hodgman v. S. L. & S. R. Co.,* 45 Ill. App. 375; *Glidden v. Poolen,* 50 Ill. App. 36.

It also appears from the record that the jury found interest on the amount of damage allowed. This was

error. It has been held that interest in this state is a creature of statute and regulated thereby. It is only recoverable in the absence of contract, in the cases enumerated in the statute. An action in damage for a breach of warranty is not one of the enumerated cases. —*D. S. P. & R. R. Co. v. Conway,* 8 Colo. 16, 5 Pac. 142; 54 Am. Rep. 537.

There is a question raised as to the right to recover, upon the part of three of the plaintiffs whom it was alleged fraudulently induced the remaining plaintiffs to enter into the contract of purchase. Under our view the action herein must stand upon the written agreement between the parties, and under which all are alike liable.

The plaintiffs all join in this action. The defendant company cannot complain of any alleged fraud upon the part of the three plaintiffs. If there was such fraud it was induced by the defendant. Beside the judgment must be for the same amount, whether in favor of a part, or all the plaintiffs.

The judgment is reversed with instructions to permit the parties to amend their pleadings as they may be advised, and to proceed in conformity with the views herein expressed.

*En banc.*

MUSSER, C. J., not participating.

*On Petition for Rehearing.*

*Per curiam; en banc.*

In support of the petition for rehearing it is claimed that the second cause of action does not show upon its

face that it is based upon the written contract. It is also claimed that this cause of action is aided by the answer and reply, and that from these pleadings as a whole, it appears a cause of action was stated on that contract. It is further claimed that the cause was tried without objection, as though proper issues had been made up in an action on the written contract.

The testimony conclusively established that the only contract between the parties was the agreement and bill of sale, and that plaintiffs' cause of action is limited to a breach of the warranty which it contained. The complaint does not state a case for this breach, and even if, by the answer and reply, it should be conceded that a cause of action was stated for the breach of warranty contained in the written contract, plaintiffs did not make a case entitling them to damages for this breach. There was no testimony introduced to establish damages in conformity with the rule in such cases, and the cause was submitted to the jury upon an erroneous theory, as pointed out in the opinion. In this state of the record this court cannot, from an examination of the testimony, determine what damages the plaintiffs may be entitled to recover. In brief, before that question can be determined, the case must be tried upon a complaint which states a cause of action, by the introduction of testimony which tends to establish the issues of fact which plaintiffs must prove in order to make a case properly pleaded and submitted to a jury under appropriate instructions. Moreover, the case was submitted to the jury on both causes of action, and as the jury returned one general verdict, it is impossible to tell upon which cause of action the verdict was based.

*Rehearing denied.*

Decided March 24, A. D. 1914. Rehearing granted July 14, 1914. Judgment affirmed on rehearing April 5, A. D. 1915.