[OCTOBER TERM, 1916.]

LEITNER, ET AL., v. THAYER, ET AL.
(No. 850; Decided October 2nd, 1916; 159 Pac. 1084.)

EXPRESS AGREEMENT—EVIDENCE—CUSTOMS AND USAGES—SALES—RE-
COVERY FOR BREACH OF WARRANTY—CONTRACT—REMEDY OF BUYER.

1. The custom among dealers in stallions as to methods of con-
   ducting sales and as to warranties given is immaterial in
   case of a sale with express agreement.
2. Though contract of sale of a stallion provides that if he
   proves not to be as warranted, the sellers on return of
   him will furnish another, yet, it containing nothing obligat-
   ing the buyers to do so, they may, in case of breach of
   the warranty, retain him and recover damages for the
   breach.

ERROR to District Court, Big Horn County; CARROLL H. PARMELEE, Judge.

Action by Frank A. Leitner and others, co-partners do-
ing business under the name and style of Leitner Bros., against William Thayer and another to recover upon notes given in the purchase of a stallion. Judgment for defend-
ants and plaintiffs bring error. The facts are stated in the opinion.

*Thomas M. Hyde, Frank Hunter,* and *George W. Farr,* for plaintiffs in error.

The court erred in refusing plaintiff's offer to prove that counsel for defendants agreed to produce the original bill

of sale; whether a bill of sale had been given at the time of the purchase being an important issue in the case, the defense being that oral warranties were made by plaintiff's agent at the time of the sale; the admissions of counsel bind their clients. (4 Cyc. 949, 950.) The court erred in refusing plaintiff's offer to prove the custom and practice adopted by dealers as to sales and warranties of stallions; the court erred in giving instruction No. 1 relating to the authority of plaintiff's agent. (31 Cyc. 1353.) The court erred in excluding correspondence passing between the parties, marked Exhibits Nos. 5 and 6. The court erred in overruling and denying defendant's motion for a directed verdict. (Denver Horse Importing Co. v. Schafer, et al., 147 Pac. (Colo.) 367; Davis v. Juerson, 5 S. D. 295, 58 N. W. 796; Walters v. Akers, 31 Ky. Law Rep. 259, 101 S. W. 1179; Dunham v. Sahnon, 130 Wis. 164, 109 N. W. 959; Wisdom v. Nicholas Shepard Co., 29 Ky. Law Rep. 1128, 97 S. W. 18; J. L. Case Threshing Mch. Co. v. Hall, 32 Tex. Cir. App. 214, 73 S. W. 835.) The court erred in refusing plaintiff's requested instructions "A" to "H" inclusive. The court erred in giving instructions numbered 2, 3, 4, 8, 10, 11, 17, 18 and 19 and in modifying instructions numbered 20 and 21 in view of the fact that plaintiffs were not permitted to prove custom among dealers in the sale and warranty of stallions.

*C. A. Zaring* and *W. L. Simpson,* for defendants in error.

Error assigned upon the alleged promise of counsel to produce the original bill of sale is without merit as the statement would not be admissible to bind client unless he were present or ratified it. (Wigmore on Evidence, Vol. 2, Par. 1063-2; Perkins v. Hawkshaw, 2 Stark 239; 4 Cyc. 949; Jones on Evidence, Page 325.) The bill of sale showing an express agreement having been introduced, there was no error in excluding evidence of the custom obtaining among dealers in the sale and warranty of stallions. The correspondence offered by plaintiffs was immaterial; there was sufficient evidence upon which to submit the cause to the

jury and there was no error in denying plaintiff's motion for a directed verdict. It being shown by the evidence that defendants had no knowledge of limitations placed upon agreements of authority there was no error in refusing to give instructions "A" and "E." (31 Cyc. 1327.) No authorities are cited to support assignments of error with reference to the modifications of instructions numbered 20 and 21, and the special interrogatories requested by defendants were material and were properly given; the verdict and judgment should be affirmed.

BEARD, JUSTICE.

This is an action on three promissory notes executed by the defendants in error. The petition is in the usual form in three counts. The defendants answered, in the first count of their answer, admitted the execution of the notes, and alleged that the notes were obtained by fraud and misrepresentation and were wholly without consideration, as would fully appear in the affirmative defenses thereinafter set forth. In the second count of their answer they alleged, in substance and so far as material here, that the notes were given as part consideration for the purchase price of a certain stallion. That said stallion was falsely and fraudulently represented by plaintiffs to defendants to be in good health, free from disease and suitable for breeding purposes and would get sixty per cent. of mares bred to him with foal, and was a good foal getter. That said stallion proved to be impotent and of no value for breeding purposes. The plaintiffs replied, admitting that the notes were given as part purchase price of the stallion; denied the other allegations of the answer, and alleged that they made to defendants no warranty or warranties with respect to the breeding qualities or otherwise of said stallion save and except as contained in a certain writing called a bill of sale (a copy of which is set out in full in the reply and will be hereinafter referred to.). That defendants had failed to return the stallion as provided in said writing, but had kept possession of him.

The cause was tried to a jury which returned a general verdict in favor of defendants, and also answers to certain special interrogatories submitted to it. Judgment was rendered in favor of defendants on the verdict, and plaintiffs bring error.

· That the stallion was warranted to be a sixty per cent. foal getter is not here in dispute. The claim of defendants being that the warranty was verbal and made before or at the time the notes were executed and delivered, and was to the effect that if with good care the horse did not prove to be a sixty per cent. foal getter the defendants could return him and receive another horse; and they deny having received any written warranty. The defendants claimed that the only warranty their agent who made the sale was authorized to give was a written warranty, and that a bill of sale, a purported copy of which was admitted in evidence, and which they claimed was delivered to defendants, was the only warranty given. Their contention is that by its terms if the horse did not prove as warranted as a foal getter the only remedy the defendants had was to return the horse at the time and place therein stated and receive another horse. The paper admitted in evidence is as follows:

"Know All Men by These Presents, That we, Leitner Bros. & Green, of Miles City, Montana, have this day sold to Fenton Percheron Horse Co. of Fenton, Big Horn Co., Wyo., The Percheron Stallion named Francois No. 40938 for the consideration of the sum of Four Thousand Dollars the receipt whereof is hereby acknowledged.

"In the event that the above named stallion, in perfect health, with proper usage, and the mares to him regularly returned and tried or bred, on one full service season's trial does not get with foal fifty per cent of the mares regularly tried and bred to him, then on return of the said stallion to us at Miles City, Montana, during the first week in the month of April next following the full service season first concluded after the date hereof, in good health and condition, we agree to furnish the above named purchaser, with-

out further charge, another pure bred stallion of equal quality, in exchange; but it is expressly provided, as a condition of this warranty, that the tally sheet accompanying and delivered with this bill of sale shall be accurately filled out, with date of each service and trial, to enable identification of all mares bred, and after being so filled out shall be returned to us at Miles City, Montana, by registered letter, not later than July 15, 19   . It is hereby stipulated that a stallion's full service season shall be considered as the period commencing the first day of May and ending the first day of July.

"In the event the conditions of the above agreement are not faithfully performed, time being of the essence of this contract; or should the above named stallion hereafter become injured or disabled through accident or disease, or should any changes, additions or alterations be made in this Bill of Sale, not shown by the duplicate copy of same preserved by us, this warranty shall be null and void and of no effect, and all obligations incurred by us herein shall be considered fulfilled and ended.

"This Bill of Sale contains all the agreements of warranty or guarantee made by us in the sale of the above mentioned stallion, and it is expressly provided that we shall not be liable for any claim that may hereafter be made alleging any verbal agreement of ourselves or agent in the sale of said horse.

"In Witness Whereof, We have hereunto set our hands and seals this 20 day of May, 1909."

"Leitner Bros. & Green."      (SEAL)

J. S. Green, the agent of plaintiffs who made the sale, testified as a witness for plaintiffs and stated that in the bill of sale which he said he delivered to the secretary of the Fenton Percheron Horse Co. the words "fifty per cent," read sixty per cent," in the original; and that the blank date "July 15, 19" was July 15, 1909, and that the instrument was signed "Leitner Bros. & Green by J. S. Green, Agent." The evidence further discloses that the Horse Co.

was not formed until the day after the notes were given and the horse delivered. Complaint is made by counsel for plaintiffs that the court refused to permit this witness to testify as to the custom among dealers in that class of horses as to the methods of conducting such sales and as to warranties given. He was permitted to testify what he did in this instance and that that was the usual custom of plaintiffs. It was immaterial what the usual or general custom was as defendants were relying upon an express agreement. Plaintiffs also complain of certain instructions given by the court to the jury as to the authority of the agent to warrant the quality of the horse; and in refusing certain instructions requested by plaintiffs in that respect. But in view of the construction we think must be put upon the contract as claimed by plaintiffs, it is not necessary to discuss those points. It clearly appears from plaintiff's own evidence that their agent was authorized to sell the horse with a warranty that he would prove to get with foal sixty per cent. of mares regularly bred to him, with the agreement that in the event he failed in that respect, then on the return of said stallion to plaintiffs they would furnish another stallion of equal quality. The evidence abundantly sustains the finding that this horse proved to be a failure as a foal getter and was worthless for breeding purposes. There is very little difference between the parties as to what the warranty in this case in fact was. In the event the horse proved not to be as warranted, then, upon a return of the horse to plaintiffs they were to furnish another; but there is nothing in the contract obliging defendants to so return him, nor is there anything therein whereby defendants waived their legal right to retain the property and when sued for the purchase price to recoup their damages for the breach of warranty. When personal property is sold with a warranty, and the sale is complete, with a subjoined agreement to take back the property if it does not prove as warranted and to exchange it for other property, or to refund the purchase price, the better and more reasonable rule, in our opinion, is, that the purchaser in case of a breach of the warranty has the option

of either returning the property or to retain and recover damages for the breach. In Williston on Sales it is stated: "It is not uncommon for warranties expressly to state that the buyer shall have the right to rescind the transaction for breach of warranty, and that on the returning of the goods in such event the buyer shall either be entitled to have his money back or to have other goods instead of those first taken. Conditions are often in such contracts imposed upon the right of rescission, and if imposed, of course must be observed in order to entitle the buyer to rescission. It has sometimes been contended that such an express provision for rescission amounted in effect to an agreement that this right should be the only right available to the buyer for breach of warranty. No doubt a contract may provide for rescission as a sole remedy. The mere fact, however, that the contract provides that the buyer may rescind the contract and return the goods does not of itself exclude the buyer from pursuing other remedies allowed by law for breach of warranty." While there are some decisions to the contrary, the above statement of the rule in cases like the one here is amply supported by authority, and in our opinion is the correct rule. In a leading case, often cited, Douglass Axe Manufacturing Company v. Gardner, 10 Cush. (Mass.) 88, it is held: "When a seller, in addition to a warranty of property, makes a promise to take it back if it does not conform to the warranty, we cannot hold that such superadded promise rescinds and vacates the contract of warranty. We are of the opinion that, in such case, the buyer has, if not a double remedy, at least a choice of remedies, and may either return the property within a reasonable time, or keep it and maintain an action for breach of the warranty." That construction of contracts similar to the one we are considering has been approved in the following cases: Shupe v. Collender, 56 Conn. 489, 15 Atl. 405, 1 L. R. A. 339; Love & Co. v. Ross, et al., 89 Ia. 400, 56 N. W. 421; Hefner v. Haynes, 89 Ia. 616, 57 N. W. 421; Hollwell v. McLaughlin Bros., 136 Ia. 279, 111 N. W. 428; Elwood v. McDill, 105 Ia. 437, 75 N. W. 340; Kemp v.

Freeman, 42 Ill. App. Ct. 500; Cook v. Lantz, 116 Ill. App. Ct. 472; Moore v. Emerson, 63 Mo. App. 137; Birch v. Kavanaugh Knitting Co., 34 N. Y. App. Div. 614, 54 N. Y. Supp. 449; Mandel v. Buttles, 21 Minn. 391; Fitzpatrick v. D. M. Osborne Co., 50 Minn. 261, 52 N. W. 861; Park et al. v. Richardson & Boynton Co., 81 Wis. 399, 51 N. W. 572; Eyers v. Haddem, 70 Fed. 648; Denver Horse Importing Co. v. Schafer, 58 Colo. 376, 147 Pac. (Colo.) 367. By the terms of the contract, as plaintiffs concede they were, defendants were given the right upon returning the horse at a certain time and place to rescind the contract, and in that event they were bound to receive another horse. Whether the defendants would have had the right to rescind the contract by a return of the horse in the absence of such contract need not be discussed. By the contract they were given that right; but it was not their exclusive remedy. The language of the contract is not that if the horse failed to comply with the warranty, the defendants agree to return him, or that they shall or must return him; but is, "then on return of the said stallion" etc., plaintiffs agree to furnish another. This gave defendants the option to return the horse and take another; or they could keep him and recover damages for the breach of warranty.

There was sufficient evidence to sustain the finding of the jury that the warranty was verbal, and that no written warranty was delivered; and the warranty as claimed by defendants is substantially that which plaintiffs admitted the agent was authorized to make and did make.

Some other matters have been assigned as error, but they do not affect the merits of the case, and as we hold that the agreement that upon a return of the horse plaintiffs would furnish another did not deprive the defendants of their right to retain him and recoup their damages for a breach of warranty when sued for the purchase price, those assignments of error need not be considered. The judgment of the district court is affirmed.              *Affirmed.*

Potter, C. J., and Scott, J., concur.